**GEOTECH ENERGY CORPORATION, Appellant,**

v.

**GULF STATES TELECOMMUNICA-TIONS AND INFORMATION SYSTEMS, INC., Appellee.**

No. C14–88–618–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 25, 1990.

Rehearing Denied April 12, 1990.

David L. Burgert, Houston, for appellant.

Penny P. Bell, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

CANNON, Justice.

Geotech Energy Corporation [Geotech] appeals from a judgment on the jury's verdict in favor of Gulf States Telecommunications [Gulf States] in a breach of contract case. Geotech alleges the trial court erred (1) by submitting an instruction concerning substantial performance, (2) by refusing to submit an issue on mitigation of damages, (3) by denying Geotech's motion for continuance, (4) by refusing to submit an issue on the effect of reciprocal promises, (5) in awarding damages based on insufficient evidence, and (6) by submitting an issue on bad faith filing of a Deceptive Trade Practices Act claim. We affirm the judgment of the trial court.

On June 27, 1986, Geotech and Gulf States signed a contract. Under the terms of the contract Gulf States was to install a used OKI Spectrum 100A telephone system; Geotech was to arrange for payment to Gulf States through a third-party leasing company. Geotech negotiated a lease agreement with its usual leasing company, Corporate Funding. When Geotech signed a certificate of acceptance for the telephone system, Corporate Funding was then to pay Gulf States.

The equipment was installed and the necessary software written by Chuck Toney, vice president of Gulf States. After a few problems were corrected, the system was verbally accepted by Joel Brown of Geotech. Both Brown and Linda McNaspy, vice president of Geotech, assured Gulf States the certificate of acceptance would be signed by Michael Reedy, one of Geotech's owners, who was in California at the time and the person to whom the certificate was sent.

The record reflects that when Reedy returned from California he was unhappy with the appearance of the telephones, because they did not look sufficiently "high tech". Geotech then began a series a meritless complaints about the phone system. Toney made daily calls at Geotech to attempt to correct the alleged problems. Eventually Gulf States offered to remove the OKI system and replace it with an alternate one, if an inspection by a neutral third-party found it to be defective. Geotech refused to allow such an inspection.

Ultimately, Geotech had the system dismantled and refused to pay Gulf States. Gulf States sued for breach of contract.

Geotech answered and counterclaimed against Gulf States for violations of TEX. BUS. & COM.CODE ANN. §§ 17.41–17.826 (Vernon 1987 & Supp.1990) [more commonly referred to as the Deceptive Trade Practices Act, or DTPA].

Geotech's first point of error contends the trial court erred by including an instruction on substantial performance in the jury's charge. Since Geotech raised no objection to the language of the instruction given, we are only concerned with the question of whether an instruction on substantial performance was proper in this case.

Geotech argues the doctrine of substantial performance is inapplicable because this case is controlled by Chapter 2 of TEX.BUS. & COM.CODE ANN. (Vernon 1968 & Supp.1989) [more commonly referred to as the Uniform Commercial Code, or the U.C.C.]; alternatively, it contends that the doctrine is strictly limited to cases involving breach of construction or employment contracts. We disagree with both propositions.

■ Chapter Two of the U.C.C., by its express terms, applies only to contracts involving the sale of goods. TEX.BUS. & COM.CODE ANN. §§ 2.102, 2.106 (Vernon 1968). The contract before us does not fall within its scope.

Appellant concedes the contract involves both goods and services. When faced with such a hybrid contract we must determined whether the essence of the contract is the sale of materials or services. *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392, 394 (Tex. 1982). Obviously telephone equipment, the hardware, is a necessary component for the installation of telephone services. However, the hardware alone would be useless to a buyer. The record reveals the telephone system in question is a very sophisticated model. A significant degree of expertise on the part of Gulf States' representative, Chuck Toney, was necessary to install the hardware. Further, even with the equipment installed, Toney's services in writing the software were essential to make the phone system operable and to customize it to meet Geotech's specific needs. The contract itself is written as a

contract for service: "Gulf States shall perform and/or deliver services on the Customers premises. . . ." Since the essence of this contract is services, not goods, it does not fall within the scope of the U.C.C.. *See Printing Center of Texas v. Supermind Publishing Co.*, 669 S.W.2d 779, 782 (Tex. App.—Houston [14th Dist.] 1984, no writ)

■ Even if we assume, arguendo, that the contract essentially involves goods, the U.C.C. does not apply because the contract does not provide for the *sale* of goods to Geotech. Section 2.106 of the U.C.C. specifies that a sale "consists in the passing of title from the seller to the buyer for a price." Geotech opted to lease the equipment through a third-party leasing company instead of purchasing it outright. The record reveals Geotech asserted there was no sale, that Geotech would never own the equipment; rather, the leasing company would own it. By Geotech's own admission, title would never pass to it, so no sale was to occur. *See O J & C Co. v. General Hospital Leasing*, 578 S.W.2d 877, 878 (Tex.App.—1979, no writ); *Three Bears Inc. v. Transamerican Leasing*, 574 S.W.2d 193, 198 (Tex.App.—El Paso 1978) *aff'd in part, rev'd in part on other grounds*, 586 S.W.2d 472 (Tex.1979).

■ Geotech asserted during oral argument that it would have had an option to buy the equipment at the end of the lease term, and that the lease agreement with Corporate Funding assigned to appellant all of Corporate Funding's rights against Gulf States. We note that the copy of the lease agreement between Geotech and Corporate Funding in the record does not contain a purchase option. Further, Geotech did not bring this action as assignee of Corporate Funding's rights. In fact, though its contract with Gulf States required Geotech to enter into a binding lease agreement, Geotech's pleadings refer to the lease as "the proposed lease" and assert that Corporate Funding returned it to Geotech stamped "void" after Geotech refused to sign the certificate of acceptance. Geotech cannot meet the U.C.C. requirement for the passage of title by claiming supposed rights created by an instrument

that Geotech has previously asserted is void as a result of its own actions.

■ Since the U.C.C. is inapplicable, the trial court correctly applied common law principles to the case. Geotech contends that Texas law limits consideration of substantial performance to those cases involving breach of construction and employment contracts. However, a review of the case law reveals that substantial performance is applied to a broad range of contract cases. *See, e.g., Ellis v. Waldrop,* 656 S.W.2d 902, 904 (Tex.1983) (upheld jury finding of substantial performance of a contract for the right of first refusal to purchase property); *Cranetex, Inc. v. Precision Crane & Rigging,* 760 S.W.2d 298, 302 (Tex.App.—Texarkana 1988, no writ) (applied doctrine to a contract for repair of a crane); *Argos Resources, Inc. v. May Petroleum Inc.,* 693 S.W.2d 663, 664–665 (Tex.App.—Dallas 1985, no writ) (applied doctrine to an oilfield drilling contract); *Del Monte Corp. v. Martin,* 574 S.W.2d 597, 599 (Tex.App.—San Antonio 1978, no writ) (upheld jury finding of substantial compliance with a contract for sale of crops).

■ Geotech has cited no authority excepting their agreement with Gulf States from the general principles of contract law, which include the doctrine of substantial performance. Gulf States plead full performance, which supports the submission of an instruction on substantial performance. *Zion Missionary Baptist Church v. Pearson,* 695 S.W.2d 609, 611 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) *citing Del Monte,* 574 S.W.2d at 599. Since both the pleadings and the evidence supported submission of an instruction on substantial performance, the trial court did not err. Point of error number one is overruled.

■ Geotech next alleges the trial court erred in refusing to submit an issue on mitigation of damages. A defendant claiming failure to mitigate damages has the burden of proving lack of diligence on the part of the plaintiff, and the amount by which the damages were increased as a result of the failure to mitigate. *Cocke v. White,* 697 S.W.2d 739, 744 (Tex.App.—

Corpus Christi 1985, writ ref'd n.r.e.); *R.A. Corbett Transport, Inc. v. Oden,* 678 S.W.2d 172, 176 (Tex.App.—Tyler 1984, no writ).

■ Geotech contends Gulf States should have sold the OKI to a third-party, thus mitigating its damages. Gulf States had no duty under the contract, or at common law, to find a third-party to assume all of Geotech's contractual obligations. Its only duty was to use ordinary care and reasonable diligence to minimize its damages. Geotech produced no evidence that Gulf States failed to do so. What the record does reflect is that Toney made almost daily trips to the Geotech offices in response to their complaints in an attempt to satisfy them. In fact, Geotech's own counsel elicited testimony from Toney that he had attempted, unsuccessfully, to find a third-party to buy the OKI from Geotech.

■ Even if we were to assume Geotech presented more than a scintilla of evidence that entitled it to an issue on mitigation of damages, any error involved would be harmless. To determine whether an alleged error in the jury charge is reversible, we must consider the pleadings, the evidence presented, and the charge in its entirety. An alleged error will be deemed reversible only if, when viewed in light of the totality of the circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause rendition of an improper judgment. Tex.R.App.P. 81(b); *Island Recreational Development Corp. v. Republic of Texas Savings,* 710 S.W.2d 551, 555 (Tex.1986).

The evidence established that Gulf States offered to replace the system with an alternate choice if an inspection by a neutral expert revealed defects in the OKI, and that Geotech refused to permit such an inspection. Geotech can not refuse permission to make a reasonable effort to prevent damages, and then prevail in charging Gulf States with contributing to its damages for failing to mitigate. *Shell Pipeline Corp. v. Harris,* 68 S.W.2d 236, 238 (Tex.Civ.App.

—Austin 1934, no writ). Accordingly, point of error number two is overruled.

In its third point of error, Geotech argues the trial court erred in denying its motion for continuance. Trial in this case was set to begin on March 3, 1988. That morning Geotech requested a continuance because its "lead" attorney, John Talton, had the mumps and Talton's co-counsel, James Dunn, was set for trial in another case on March 9. The trial court denied the motion and commenced the trial.

The decision to grant or deny a motion for continuance is within the sound discretion of the trial court. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 634 (Tex. 1986). An appellate court may not substitute its judgment for that of the trial court, rather it only decides whether the trial court's action was arbitrary and unreasonable. *Landry v. Travelers Insurance*, 458 S.W.2d 649, 651 (Tex.1970). Before a reviewing court will reverse the trial court's ruling, it should appear from the record that the trial court has so abused its discretion as to disregard the party's rights. *Yowell* 703 S.W.2d at 635.

The record before this court reveals no such abuse of discretion. Contrary to Geotech's assertion that James Dunn lacked sufficient time and opportunity to adequately prepare for Geotech's defense, the record shows him to be most knowledgeable about the case. Dunn prepared Geotech's pleadings and conducted much its discovery. Under TEX.R.CIV.P. 8, Dunn was in fact the attorney in charge. Finding no abuse of discretion, point of error number three is overruled.

Geotech complains in its fourth point of error that the trial court refused to give the following instruction to the jury: "[o]ne who breaches a contract cannot recover on it. Reciprocal promises are presumed to be mutually dependent rather than independent and that breach of one will excuse performance of the other." The requested instruction, however, is not an accurate statement of the applicable law. Even the case cited by Geotech, and from which the language of the requested instruction seems to be taken, recognizes that a breach will occur only if the action in question was unjustified, and that only a material breach would preclude recovery on the contract. *Morgan v. Singley*, 560 S.W.2d 746, 749 (Tex.Civ.App.—Texarkana 1977, no writ).

The jury charge included the following instruction: "[y]ou are instructed that a contract or agreement is a promise or set of promises, oral or written, for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty. Breach of contract is the unjustified failure of one of the parties to the contract to perform all or any part of what is promised in the contract...." Since the requested instruction was a misstatement of law, it did not satisfy the requisites of TEX.R.CIV.P. 278; the instruction given was proper. Accordingly, point of error number four is overruled.

The fifth point of error asserts that the evidence was insufficient to sustain the jury's finding on damages. Geotech contends Gulf States is entitled only to the $12,575 due under the contract, plus the $850.54 due for the additional services and/or materials provided. Since the jury awarded $18,000 in damages, Geotech argues $4,574.46 is unsupported by the evidence.

In reviewing questions of factual sufficiency, the jury's finding must be upheld unless we find the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Sheridan & Son Co. v. Seminole Pipeline*, 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ). This court may not substitute its opinion for that of the trier of fact. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 896 (1951); *Thompson v. Wooton*, 650 S.W.2d 499, 501 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). The trier of fact is the sole judge of the credibility of the witnesses and the weight given their testimony. *Rego Co. v. Brannon*, 682

S.W.2d 677, 680 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■ The record contains the testimony of the company treasurer concerning loss of profit by Gulf States as a result of Geotech's breach. He testified that the average monthly earnings for Gulf States in 1986, excluding the two months during which Charles Toney was installing the OKI at Geotech and attempting to satisfy their demands, was $15,500. He stated that the earnings for those two months were $3,900 and $9,100 respectively. Due to the sharp decline in revenue during those months, he personally loaned Gulf States $11,775 to keep the company operating. He estimated Gulf States lost about $4,400 in other sales and services as a result of Geotech's breach.

This testimony, coupled with the testimony of Charles Toney as to the repeated visits and many unbilled hours he spent attempting to placate Geotech, is sufficient to support the $4,574 the jury awarded above the invoiced amounts. *Vance v. My Apartment Steak House*, 677 S.W.2d 480, 482 (Tex.1984); *Memorial City General Hospital Corp. v. Cintas*, 679 S.W.2d 133, 137 (Tex.App.—Houston [14th Dist.] 1984, no writ) (holding it is not necessary that profits be susceptible to exact calculation, rather it is sufficient if they can be determined with a reasonable degree of certainty).

■ Geotech also challenges the sufficiency of the evidence to support the $25,000 in attorneys fees awarded to Gulf States. Counsel for both parties testified that one-hundred dollars per hour was a reasonable hourly rate for this case. Gulf States' attorney testified that 209.75 hours of professional time had been spent on the case prior to the trial. She further estimated that an additional thirty [30] hours would be necessary to complete the trial, and that expenses for the case were approximately one-thousand dollars. Given that the trial began on March 3 and the jury did not return a verdict until March 10, her estimate of thirty additional hours of professional time was conservative. Two-hundred and forty hours, billed at one-hundred dollars per hour, plus one-thousand dollars in expenses equals $25,000, which is exactly what the jury awarded.

There is ample evidence in the record to support the jury's findings on damages. Point of error number five is overruled.

■ In its final point of error, Geotech complains that the trial court erred in submitting a special issue on whether its D.T.P.A. claim against Gulf States was filed in bad faith. The determination of whether an action under the D.T.P.A. was brought in bad faith is for the court, and not the trier of fact. *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex.1989). However, Geotech has made no showing that submission of the issue amounted to such a denial of rights as was reasonable calculated, and probably did, cause rendition of an improper judgment. Tex.R.App.P. 81(b). The judgment included only damages and attorney's fees properly recoverable under Gulf States' breach of contract action against Geotech. Any error involved in submitting the issue to the jury was, therefore, harmless.

Finding no merit in Geotech's six points of error, we affirm the judgment of the trial court.