The CITY OF SAN ANTONIO, Appellant,

v.

Norris P. "Frenchie" GUIDRY, Appellee.

No. 04–88–00478–CV.

Court of Appeals of Texas, San Antonio.

Oct. 31, 1990.

Rehearing Denied Dec. 4, 1990.

Jackson C. Hubbard, Judith A. Yacono, City Attorney's Office, Nissa A. Mykleby, Karen Angelini, Brock & Mathis, San Antonio, for appellant.

Gilbert Lang Matthews, William V. Rainey, Law Office of Gilbert Lang Matthews, Fred Shannon, Charles Estee, Shannon & Weidenbach, Inc., San Antonio, for appellee.

Before REEVES, PEEPLES and CARR, JJ.

## OPINION

PEEPLES, Justice.

The City of San Antonio appeals an adverse judgment for damages based on a jury finding of inverse condemnation. The jury found that a city drainage and street project in front of plaintiff Guidry's barbecue restaurant was unduly delayed and caused a temporary limited restriction of access to the premises. The jury assessed Guidry's damages at $220,000. The City contends that (1) the issue of inverse condemnation was a question of law that should not have been submitted to the jury, (2) in any event the court erred in refusing to give certain jury instructions concerning inverse condemnation, (3) there is insufficient evidence of inverse condemnation, (4) two jury answers are in irreconcilable conflict, and (5) the damages question was improperly submitted. We affirm the judgment.

In June 1985 the city commenced construction of drainage and street improvements on Jackson–Keller Road. Guidry's restaurant was situated in the middle of the block, and while the construction took place, access to his restaurant was obstructed in varying degrees by barricades on Jackson–Keller Road, by trenches, stacks of pipe, piles of dirt and asphalt near his restaurant, and by heavy equipment on his parking lot. There was conflicting evidence as to whether on one or two occasions the blockage was total, but at all other times one could reach the premises by vehicle. Guidry presented evidence that completion of the project was unduly

delayed, and that as a result he lost profits and eventually went out of business.

Guidry brought suit against the City and its contractor, South Texas Construction Company. The court submitted five theories of liability against South Texas and three against the City.[1] The jury answered several liability questions adversely to South Texas, which settled with Guidry after verdict and is no longer involved in this suit. The jury found in the City's favor on all liability issues except inverse condemnation. The court rendered judgment for Guidry on the verdict.

## I. INVERSE CONDEMNATION AS A QUESTION OF LAW.

Inverse condemnation occurs when property has been taken or damaged for a public purpose without formal condemnation proceedings, and the landowner initiates a suit for compensation. *See City of Abilene v. Burk Royalty Co.,* 470 S.W.2d 643, 646 (Tex.1971); *Brazos River Authority v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99, 104 (1961); *Allen v. City of Texas City,* 775 S.W.2d 863, 864–65 (Tex.App.—Houston [1st Dist.] 1989, writ denied).[2] Ordinarily a governmental unit is not liable for damages resulting from temporary obstructions caused by a public works project unless there is proof of negligence or undue delay. *See* Annotation, *Damages Resulting From Temporary Conditions Incident to Public Improvements or Repairs as Compensable Taking,* 23 A.L.R.4th 674, 678–98 (1983); 2A NICHOLS ON EMINENT DOMAIN § 6.36[2] (3d ed. 1990); 5 *Id.* § 16.1011[1].[3]

---

1. The court submitted six separate theories of recovery: (1) negligence and (2) breach of construction contract to which Guidry was a third-party beneficiary against *both defendants;* (3) breach of agreement to provide constant access, (4) gross negligence, and (5) misrepresentation against *South Texas* alone; and (6) inverse condemnation against the *City* alone.

2. Similarly, the United States Supreme Court uses the term "inverse condemnation" as "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *United States v. Clarke,* 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373, 377 (1980).

3. According to Nichols, the general rule of noncompensation is "a matter of public necessity" that recognizes "the impossibility of constructing a subway or a sewer or of laying water-pipe in the streets of the business section of a city without in some degree interfering with access to abutting property." 2A NICHOLS ON EMINENT DOMAIN § 6.36[2], at 6–289–290 (3d ed. 1990). Nichols states the exceptions to the general rule in terms that are essentially the same as those in Texas:

   However, if as a result of negligence, the time for the completion of the project is unduly and unreasonably prolonged, thereby continuing interference with business for an unnecessary length of time, a cause of action

In *City of Austin v. Avenue Corp.*, 704 S.W.2d 11 (Tex.1986), the court categorized inverse condemnation cases involving restriction of access as follows:

(1) those in which there was a total restriction of access for either a temporary or a permanent period of time; (2) those in which there was a partial restriction of access for a temporary period of time; and (3) those in which the activity causing the restriction of access was *illegal, unreasonable or unnecessary.*

*Id.* at 12 (emphasis added).[4] Later in the opinion the court summarized the inverse condemnation cause of action somewhat differently:

[In] order to show a material and substantial interference with access to one's property, it is necessary to show that there has been [1] a total but temporary restriction of access; or [2] a partial but permanent restriction of access; or [3] *a temporary limited restriction of access brought about by an illegal activity or one that is negligently performed or unduly delayed.*

*Id.* at 13 (emphasis added). Guidry alleged a cause of action under category three, and the jury found a "temporary limited restriction of access" brought about by a construction project that was "unduly delayed."

█ The City first contends that whether there has been an inverse condemnation is a question of law for the court. A long line of cases has so held, at least in lawsuits challenging a governmental body's decision about land use. When governmental land use decisions have caused a partial but permanent alteration of traffic patterns, the supreme court has consistently held that whether there has been a materi-

al and substantial impairment of access (which is compensable) or merely a diversion to a more circuitous route of access (which is not compensable) is a question of law, not a question of fact. *State v. Wood Oil Distr., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988); *DuPuy v. City of Waco*, 396 S.W.2d 103, 110 (Tex.1965). Similarly, courts decide as a question of law the compensability of so-called "police power" ordinances that impose burdens on land use unrelated to access. "The question of whether a police power regulation is proper or whether it constitutes a compensable taking is a question of law and not of fact." *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex.1984) (upholding as a proper exercise of police power a city ordinance requiring dedication of park land, or payment of money in lieu thereof, as a condition to approval of subdivision plat). If the law were otherwise, juries could secondguess and compensate every land use decision made by the community's lawfully elected representatives.

In contrast, when the lawsuit challenges not the policy decision of a legislative body but, as in this case, the care and diligence with which that decision has been carried out on the job site, we think that a different rule applies. In such cases the issues are appropriate for a jury and should not be resolved as questions of law by the court.

In *City of Austin v. Avenue Corp.*, the supreme court reviewed an award of damages in a temporary obstruction case similar to our own without discussing whether the liability question should be decided by the court or by the jury. There a public works project had impaired access to a

---

for damages arises against the government. The inconvenience and damage which a property owner suffers from temporary obstructions are incident to city life and must be endured. The law gives him no relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made. However, if the temporary obstruction is a result of unreasonable, unnecessary, arbitrary or capricious acts or conduct by the one in charge of the improvement or construction, the abutting landowner has a right of action

for damages resulting from such interference with access to his property.
*Id.* at 6–289–291 (3d ed. 1990) (citations omitted).

**4.** The court might have added a fourth category for cases of permanent partial impairment of access. *See, e.g., DuPuy v. City of Waco*, 396 S.W.2d 103 (Tex.1965) (landowner entitled to compensation for material and substantial restriction of access caused by city's construction of viaduct next to property).

restaurant for nine months. The trial court found a material and substantial interference with the property owner's premises as a matter of law and submitted only the damages aspect of the case to the jury. 704 S.W.2d at 11–12. The supreme court did not say whether inverse condemnation is always a question of law in a temporary restriction case, or whether the trial court ruled that evidence conclusively established it in that particular case.

In *L–M–S Inc. v. Blackwell*, 149 Tex. 348, 233 S.W.2d 286 (1950), the court reviewed an award of damages against two contractors for lost profits caused by a construction project that had temporarily obstructed a sidewalk and part of a street where the plaintiff carried on its business. The construction was not a public works project, but it was conducted pursuant to a city permit, which expressly allowed the contractors to erect the fences and barricades that obstructed access to the plaintiff's premises. Citing many authorities, the supreme court held:

> Petitioners [the defendant contractors], acting under the permit given by the City of Dallas, had the right to reasonably obstruct the street in constructing the 15–story building. Whether the placing of the obstructions in the street in this instance was reasonable or unreasonable was a question for the jury to determine under all the facts and circumstances of the case.

233 S.W.2d at 288. But the court went on to hold that the contractors were not liable because the jury found that the obstructions were not unreasonable. *Id.* at 291.

Ordinarily questions such as whether work was performed with diligence and with due care are triable to a jury, while the review of a legislative body's decision to undertake the particular project is a question of law for the court. Guidry's count for inverse condemnation alleged temporary impairments caused by construction activity that was "negligently performed or unduly delayed." [5] *See City of Austin v. Avenue Corp.*, 704 S.W.2d at 13. We have found no cases in which the courts have said that whether temporary obstructions of access were unduly prolonged is a question of law for the court and not an issue for the jury.

In suits such as this, the landowner is seeking to hold the City liable for negligence or undue delay caused by the City's contractor. The City apparently contemplates a trial in which its liability for its contractor's negligence and delay would be litigated nonjury as a question of law, but it does not explain whether the contractor's liability for the same conduct would be tried to a jury or to the court. It is certainly possible to try some issues in a case to the court and others to a jury. *See, e.g.,* 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 2336–2337 (1971). But that would be difficult when the conduct for which the City is potentially liable is the conduct of a contractor concerning whose liability both the plaintiff and the contractor have a right to jury trial. If the jury found the contractor liable for undue delay, under the City's view apparently the court could nevertheless decide that the city was not liable for undue delay.

It is true that many cases have said that the court and not the jury decides whether

---

5. The city has not contended that the submission of undue delay (question one) and negligence (question two) as two separate jury questions amounted to submission of the same theory twice, and we express no opinion on the matter. *Avenue Corp.* spoke of a temporary limited restriction of access "that is negligently performed or unduly delayed." 704 S.W.2d at 13. Nichols says that "if *as a result of negligence,* the time for the completion of the project is unduly and unreasonably prolonged, thereby continuing interference with business for an unnecessary length of time, a cause of action for damages arises against the government." 2A NICHOLS ON EMINENT DOMAIN § 6.36[2], at 6–290 (3d ed. 1990) (emphasis added). This language suggests that there is a single cause of action for negligent, undue delay, and that negligence and undue delay are not separate theories of recovery against a governmental unit.

This case does not involve the principle that construction activities that cause damage to land, or to the structures or crops on it, are issues of tort and not condemnation. *See City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex.1971); *Texas Highway Dep't v. Weber,* 147 Tex. 628, 219 S.W.2d 70 (1949).

there has been a material and substantial impairment of access. But in those cases the property owner challenged conscious, permanent land use decisions of the legislative body, not the reasonableness of temporary impairments during construction. *See, e.g., State v. Wood Oil Distr., Inc.,* 751 S.W.2d 863 (Tex.1988); *City of San Antonio v. Olivares,* 505 S.W.2d 526 (Tex. 1974); *City of Waco v. Texland Corp.,* 446 S.W.2d 1 (Tex.1969).

We conclude that the city's liability for impairing access to Guidry's restaurant for an unduly long period of time during construction was a jury question and not a law question under the above and other similar decisions. The trial court correctly declined to decide as a question of law whether the temporary impairment of access constituted an inverse condemnation.

## II. JURY INSTRUCTIONS.

■ The next question is whether the court properly submitted the inverse condemnation theory to the jury. The City contends that several instructions should have been given. Question One read as follows (emphasis added):

> Do you find from a preponderance of the evidence that there was a temporary limited restriction of access to [Guidry's] restaurant brought about by construction which was unduly delayed by the Defendants, City of San Antonio and the South Texas Construction Company?
>
> Answer, "We do" or "We do not."
> We, the Jury, answer: [We do]

### A. *Diversion to circuitous routes.*

The City sought an instruction stating in essence that it was not liable for damages caused when Guidry's customers had to take more circuitous routes to reach the restaurant.[6] The requested instruction is based on the many cases holding that damage caused merely by diverting traffic to a more circuitous route is not compensable. *See State v. Wood Oil Distr., Inc.,* 751 S.W.2d at 865 (citing four supreme court

cases); *DuPuy v. City of Waco,* 396 S.W.2d at 110. These authorities dealt with public works projects that caused permanent, not temporary, alterations of access to the property.

We think that the tendered instruction was not a proper statement of the law in this case of temporary restriction of access. It is true that failure to give such an instruction in connection with the *damages* issue in a case involving *permanent* restriction of access has been held to be reversible error:

> [I]t was harmful error to fail to instruct the jury that the diversion of traffic from the old to the new and the "circuity of travel" cannot constitute a deprivation of reasonable access. Diversion of traffic resulting in the necessity of using circuitous routes is not compensable. [Citations omitted]. A special instruction would have adequately informed the jury that it could not consider such evidence *in determining the market value of plaintiff's property.*

*City of Beaumont v. Marks,* 443 S.W.2d 253, 257 (Tex.1969) (emphasis added).

In this temporary restriction case, however, we think that diversion to circuitous routes can be compensable for the length of time that the project is unduly delayed. To hold otherwise would allow a governmental unit to divert traffic unnecessarily and for unreasonable lengths of time without paying compensation for damage to the property owner's business, provided that customers could somehow make their way onto the premises. We think it is implicit in *Avenue Corp.* that the City cannot divert traffic and impede access to the property for an unduly long period without paying just compensation. Because the requested instruction did not correctly state the law, it was properly denied. TEX.R. CIV.P. 278.

### B. *Material and substantial interference.*

■ The City also requested an instruction stating in effect that a temporary lim-

---

6. The requested instruction read as follows:
   You are instructed that diversion of traffic resulting in the necessity of vehicles using circuitous routes does not constitute a temporary limited restriction of access.

ited restriction of access is not actionable unless it is material and substantial.[7] Question One asked simply, was there a temporary limited restriction of access caused by undue delay in the construction.

We agree with the City that the court should have instructed the jury that Guidry must prove a material and substantial restriction of access. But we hold that the requested instruction was not in substantially correct form and therefore was properly refused. As we read the supreme court's opinion in *Avenue Corp.*, it does not make compensable each and every temporary restriction of access caused by unnecessary delay. Most public works projects impair to some extent access to the adjoining land. Such restrictions do not rise to the level of compensable takings unless they are material and substantial. In the passage from *Avenue Corp.* quoted earlier in this opinion, the court did not say that undue delay by itself suffices to establish a material and substantial interference. The court seems to have taken for granted the settled principle that an inverse condemnation plaintiff must show a material and substantial interference with access.

An inverse condemnation lawsuit is a claim that property has been taken without compensation in violation of the constitution. Article 1 § 17 of the Texas Constitution provides, "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made...." In a long line of cases applying this provision to impairments of access, the supreme court has held that compensation is not required for each and every impairment. In seminal companion cases, the court held that one project in Waco caused compensable damage to one landowner but not to his neighbor, who suffered less impairment. *Compare DuPuy v. City of Waco*, 396 S.W.2d 103 (Tex.1965) (viaduct deprived landowner of reasonable access), *with Archenhold Auto. Supply Co. v. City of Waco*, 396 S.W.2d 111 (Tex.1965) (viaduct did not deprive neighbor, whose property fronted on a different street, of reasonable access). Damages caused by a governmental unit's obstructions are compensable only to the extent that they materially and substantially impair access.

The question in such cases is whether the landowner's "access rights have been impaired *to an extent* which constitutes damage to property for a public use under Article I, Sec. 17, of the Constitution of Texas." *DuPuy v. City of Waco*, 396 S.W.2d at 110; *see also City of Beaumont v. Marks*, 443 S.W.2d at 254 (question is whether "access rights have been impaired to such an extent" as to constitute a taking for public use under the constitution). "[P]roperty has been damaged for a public use within the meaning of the Constitution when access is *materially and substantially impaired* even though there has not been a deprivation of all reasonable access." *City of San Antonio v. Olivares*, 505 S.W.2d 526, 530 (Tex.1974) (emphasis added). *See also City of Waco v. Texland Corp.*, 446 S.W.2d 1, 2 (Tex.1969); *City of Houston v. Fox*, 444 S.W.2d 591, 593 (Tex. 1969). Language in *Avenue Corp.* refers to substantial and material interference without any suggestion that this line of cases does not apply. *See* 704 S.W.2d at 11, 13.

■ But the last part of the city's requested instruction went beyond the constitutional requirement of a material and substantial impairment and would also have required a finding that the obstructions and street barricades were unreasonable or unnecessary. We do not interpret the authorities to require such a finding in a temporary obstruction case of undue delay. On the contrary, damage caused by reasonable and necessary temporary obstructions can be compensable, provided the obstructions cause substantial and material denials of access for an unduly prolonged period of

---

**7.** The requested instruction read as follows:

You are further instructed that the placement or creation of barricades and obstructions does not constitute a temporary limited restriction of access unless such barricades and obstructions materially and substantially impair access and that [sic] it was unreasonable or unnecessary to place or create such barricades or obstructions.

time. Because the requested instruction contained language requiring proof that the placement of barricades and obstructions was unreasonable, which incorrectly stated the law, it was not in substantially correct form and the court did not err in denying it. TEX.R.CIV.P. 278.

### III. SUFFICIENCY OF THE EVIDENCE.

■ The city complains that there is legally insufficient evidence to support the jury's finding of inverse condemnation.[8] Question One asked whether the construction had caused a temporary limited restriction of access that was unduly delayed. To establish a taking of constitutional dimension, we have held that Guidry also had to prove that the interference with his access was material and substantial. *See City of Austin v. Avenue Corp.*, 704 S.W.2d at 13; *City of San Antonio v. Olivares*, 505 S.W.2d 526, 530 (Tex.1974); *City of Waco v. Texland Corp.*, 446 S.W.2d 1, 2, 4 (Tex. 1969). It is not contested that access to the restaurant was limited temporarily. Several witnesses testified about the construction activities, summarized at the outset of this opinion, that impeded customers from reaching the restaurant. Concerning delay, there was testimony that the Jackson–Keller bridge, which was supposed to be open to traffic after 90 days, was opened 40 days late, and that progress was delayed by the delivery of incorrect materials. A former city councilman testified for Guidry that the job was not completed quickly enough. City witnesses said that the work was not finished on schedule and that South Texas's progress was "totally unacceptable." The restrictions of access were substantial and material and went beyond the reasonable and necessary. As the city points out, there was conflicting evidence

on most if not all of these matters. But the evidence, considered favorably to the verdict, was legally sufficient under *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965), and like authorities.

### IV. CONFLICTING JURY ANSWERS.

■ The city argues that the jury's answers to questions one and six are in irreconcilable conflict. Question One established that "there was a temporary limited restriction of access to Frenchie's restaurant which was unduly delayed by the Defendants." In Question Six the jury failed to find that the *city* had breached any obligations under the contract in question, which required the contractor to maintain access to the restaurant at all times. In its answer to Question Six, says the city, the jury impliedly found that it did not deny access.

The two answers are not in conflict and can be easily reconciled. *See Bender v. Southern Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980). The contract required the contractor, but not the city, to maintain "vehicular access" to the premises. Moreover, the jury could well have answered "no" to question six because there was evidence that access was never totally denied, but "yes" to question one because access was limited and restricted (though never denied completely) for an unduly long period.

### V. DAMAGES.

■ Concerning damages, the city argues that (1) the awards for lost profits and destruction of Guidry's business overlap and constitute a double recovery, and (2) the court should have submitted two instructions that it requested.[9]

---

**8.** The City's factual sufficiency contention was not preserved by motion for new trial and has therefore been waived. TEX.R.CIV.P. 324(b)(2).

**9.** The city also argues that there is insufficient evidence to support the finding of lost profits, but that argument was not preserved in the trial court. The city did not preserve factual insufficiency because it did not urge such a point in a motion for new trial, as TEX.R.CIV.P. 324(b)(2) requires. Nor did it preserve its legal sufficien-

cy argument by any of the five procedural devices recognized by the rules. *See Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985) (motion for instructed verdict, objection to jury question, motion to disregard, motion for judgment n.o.v., or new trial).

The city did file a response to Guidry's motion for judgment, which simply said that the lost profits were not supported by the evidence because Guidry was a month-to-month tenant and

■ Guidry opened his restaurant in September 1983. The construction began in June 1985. The nearby bridge was to be open to two-way traffic by September 2, 1985, but was opened 40 days late. The entire project was completed by March 14, 1986, except for field alterations, which were completed by October 3, 1986. Guidry went out of business in May 1987. The jury awarded him $20,000 for the destruction of his business and $200,000 for lost profits. The jury also awarded Guidry $40,000 for mental anguish, but the court rendered judgment for that sum only against South Texas and not against the city, which is liable only for damage to property in a condemnation suit. *See State v. Walker*, 441 S.W.2d 168, 173 (Tex.1969); *City of La Grange v. Pieratt*, 142 Tex. 23, 175 S.W.2d 243, 245 (1943).

■ The city complains that the charge permitted Guidry double recovery for lost profits and the loss in value of his business. It is certainly true that Guidry could not lawfully recover for the two kinds of damages during the same time period. After the business was destroyed, he could recover its market value but not lost profits. *See Sawyer v. Fitts*, 630 S.W.2d 872, 874–75 (Tex.App.—Fort Worth 1982, no writ). The ability of a business to make a profit is reflected in its market value. But here there was a period of lost profits before Guidry closed the restaurant.

Question Nine of the charge gave the jury the opportunity to award damages for destruction of Guidry's business and also for lost profits. The part of question nine that dealt with lost profits instructed the jury not to include any amount that it may have awarded for destruction of the business. While this instruction could have stated the law more adequately, it was within the court's discretion.[10] *See French v. Grigsby*, 567 S.W.2d 604, 608 (Tex.Civ. App.—Beaumont), *writ ref'd n.r.e. per curiam*, 571 S.W.2d 867 (Tex.1978); *Green v. Baldree*, 497 S.W.2d 342, 350 (Tex.Civ.App. —Houston [14th Dist.] 1973, no writ).

■ The city next argues that the charge did not restrict the award to lost profits *during the temporary interruption of business.*[11] The court in *Hart Bros. v. Dallas County*, 279 S.W. 1111, 1112 (Tex.Comm'n App.1926, judgm't adopted), did state that in a suit alleging temporary interference with access, plaintiffs were entitled to lost profits and expenses "during the temporary interruption of their business." But the court said nothing to preclude recovery for lost profits for a reasonable length of time during the post-construction period when the landowner is nursing his business back to health, and we think that the jury was entitled to award such damages.[12] The

---

therefore was not entitled to recover profits from June 1985 to May 1987. The city's month-to-month tenancy argument in the trial court does not correspond to the ground urged on appeal—that there is no evidence that profits were lost.

10. Question Nine asked about damages for two elements: (a) destruction of business, as defined, and (b) "Lost profits, but do not include any amount you may have included in response to your answer to part (a) above." The instruction approved in *French v. Grigsby*, 567 S.W.2d at 608, cautioned the jury not to award money for one element that had already been awarded elsewhere "for the same loss, that is do not compensate twice for the same loss, if any."

11. The city requested the following instruction: You are instructed that the "lost profits" referred to in issue No. 9 are limited to those suffered by Frenchie Guidry during the interruption, if any, of his business as a result of Defendant's construction activities.

We note that the city did not ask the court to instruct the jury to limit Guidry's compensation to damages sustained *after* the time that the project would have been completed if reasonably performed. The city was entitled to restrict access for a reasonable length of time, for which Guidry had no right to relief. *See City of Austin v. Avenue Corp.*, 704 S.W.2d at 12–13; *L–M–S Inc. v. Blackwell*, 149 Tex. 348, 233 S.W.2d 286, 289–90 (1950); *Farrell v. Rose*, 253 N.Y. 73, 170 N.E. 498, 499 (1930).

12. There is no contention that the award fails to satisfy the requirement that damages for lost profits must be established with reasonable certainty. *See White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983); *International Harvester Co. v. Kesey*, 507 S.W.2d 195, 197 (Tex.1974); *Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340, 347 (1955); *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098 (1938).

court properly refused the requested instruction.

■ The city also assigns as error the court's refusal of its tendered instruction about mitigation of damages. The city suggested at trial that Guidry should have closed his Jackson–Keller location and opened his restaurant elsewhere, but there was no evidence to show how long it would have taken Guidry to relocate, what the move would have cost, or how successful he might have been at another location.

■ We hold that the rule of avoidable consequences, or mitigation of damages, applies in inverse condemnation cases involving temporary obstruction of access,[13] but that the city did not present legally sufficient proof to require its submission. The mitigation doctrine requires that an injured party exercise reasonable care to minimize his damages. *Geotech Energy Corp. v. Gulf States Telecommunications & Information Sys., Inc.*, 788 S.W.2d 386, 390 (Tex.App.—Houston [14th Dist.] 1990, no writ) ("ordinary care" and "reasonable diligence"); *Pulaski Bank & Trust Co. v. Texas American Bank/Fort Worth*, 759 S.W.2d 723, 735–36 (Tex.App.—Dallas 1988, writ denied) ("reasonable efforts and ordinary care"). But the doctrine applies only if damages can be avoided with "only slight expense and reasonable effort." *Pulaski Bank & Trust*, 759 S.W.2d at 735. *See also Walker v. Salt Flat Water Co.*, 128 Tex. 140, 96 S.W.2d 231, 232 (1936) ("reasonable exertions and expense"). The party who caused the loss bears the burden of proving lack of diligence on the part of the plaintiff, and the amount by which the damages were increased by the failure to mitigate. *Geotech Energy*, 788 S.W.2d at 390; *Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 806 (Tex.App.—Dallas 1987, no writ); *R.A. Corbett Transp., Inc. v. Oden*, 678 S.W.2d 172, 176–77 (Tex.App.—Tyler 1984, no writ). Because the City's proof did not meet these requirements, the court correctly refused the instruction.

We have considered all of the City's points and have found no reversible error. The judgment is affirmed.

---

**13.** For pattern instructions and supporting authorities in personal injury cases, *see* 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 7.09 (1987) and 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 80.09 (1990).