Tom E. LESTER, Appellant,

v.

Raymond "Butch" LOGAN, Appellee.

No. 13–93–031–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 8, 1994.

Rehearing Overruled Jan. 19, 1995.

Steven R. Brown, Gonzales, for appellant.

Houston Munson, Gonzales, for appellee.

Before KENNEDY, GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Tom Lester appeals from a jury finding that he breached the implied warranty of fitness for a particular purpose when he sold hay to his neighbor Raymond Logan. Lester

brings nine points of error. We affirm the trial court's judgment.

Lester grew hay on his property in Gonzales county. On December 23 or 24, 1990, Logan asked Lester to sell him some hay so he could feed his cattle. On January 1, 1991, Lester delivered 28 round bales of hay to Logan. That day, Logan put four of the round bales in different locations on his property as feed for his cattle. On January 2, 1991, Logan found that seven of his cows had died and on January 3, 1991, he found that six more cows had died. In addition, seven other cows aborted their fetuses. Logan claimed that thirteen cows had died and seven had aborted their fetuses after eating the hay he purchased from Lester.

Logan filed suit on May 24, 1991, and the case proceeded to trial. The jury found that the hay was not unfit for the ordinary purpose for which hay is used, thus finding no breach of the implied warranty of merchantability. The jury, however, found that the hay was unfit for the particular purpose of livestock consumption, thus finding a breach of the implied warranty of fitness for a particular purpose. The jury assessed damages and attorney's fees against Lester. The trial court entered judgment on the jury's verdict.

By his eighth point of error, Lester complains that Logan did not comply with the notice provision of the Deceptive Trade Practices–Consumer Protection Act (DTPA). Lester contends that Logan did not give him written notice of any implied warranty of fitness for a particular purpose claim before filing suit. Therefore, Lester argues, the trial court erred 1) in denying his second plea in abatement and 2) in admitting evidence on the issue of implied warranty of fitness for a particular purpose.

■ As a prerequisite to filing a suit seeking damages under the DTPA against any person, a consumer must give written notice to the person at least 60 days before filing suit, advising the person in reasonable detail of the consumer's specific complaint and the amount of actual damages and expenses, including attorney's fees, if any, reasonably incurred in asserting the claim. TEX.BUS. & COMM.CODE ANN. § 17.505(a) (Vernon Supp. 1994). A demand letter is sufficient if it identifies the nature of the consumer's complaint and the various amounts required to make him or her whole. *U.S. Steel Corp. v. Fiberex, Corp.*, 751 S.W.2d 628, 638 (Tex. App.—Dallas 1988), *rev'd in part on other grounds, Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442 (Tex.1989); *Silva v. Porowski*, 695 S.W.2d 766, 767 (Tex.App.—El Paso 1985, writ ref'd n.r.e.). Section 17.505 does not require the consumer to threaten suit or specify what section he thinks is violated. *U.S. Steel Corp.*, 751 S.W.2d at 638 (citing *Jim Walter Homes, Inc. v. Valencia*, 679 S.W.2d 29, 36 (Tex.App.—Corpus Christi 1984), *aff'd as modified*, 690 S.W.2d 239 (Tex. 1985)). The purpose of the DTPA notice provision is "to discourage litigation and encourage settlements of consumer complaints." *Hines v. Hash*, 843 S.W.2d 464, 468 (Tex.1992) (quoting *Jim Walters Homes Inc.*, 690 S.W.2d at 241).

■ Logan's attorney sent the following demand letter, dated February 12, 1990, to Lester:

I represent Raymond "Butch" Logan in connection with the damages he has sustained through the death loss of thirteen bred cows and seven other cows that lost their calves and related damages all caused by hay that was sold to my client by you. A chemical analysis was obtained on the hay that was fed to his livestock and the lab reports show a very high level of nitrate poisoning which caused the death of the thirteen cows and loss of an additional seven calves.

This letter is notice of my representation of Mr. Logan and also represents our demand of you under the Deceptive Trade Practices Act of the State of Texas (DTPA). Specifically, you have violated section 17.46(b)(5) in that you represented the hay in question to have characteristics, ingredients, uses and benefits which it did not have; you further violated section 17.46(b)(7) in that you represented the hay in question to be of a particular quality or grade when it obviously was not of merchantable quality; and you have violated section 17.50(a)(2) in that you have breached the implied warranty that the hay in

question was fit for the purposes and uses to which it was intended as well as the warranty of merchantability.

The hay in question was the producing cause of my client's damages and loss. To date, his damages have been evaluated as follows. The thirteen bred cows that died as a result of the contaminated hay had a value of $9,100.00. He further has sustained the loss from the seven aborted calves in an amount estimated to be approximately one-half of the value of the cow or $350.00 per animal. According to his appraiser and his veterinarian, there is a question whether these cattle would rebreed and straighten up from the damage sustained to their system. However, Mr. Logan will accept the sum of $2,400.50 for the loss of the seven calves. He has sustained out-of-pocket expenses of $158.50 for veterinarian expenses, for running the tests and analyzing the causation for the death of the cattle and has incurred attorney's fees of $1,000.00 through the writing of this demand letter.

I urge you to consult an attorney of your own choosing to respond to this DTPA letter so that he might make you aware of not only the ability of Mr. Logan to collect actual damages but the DTPA provides for punitive damages as well. That can be as high as triple the amount of actual damages plus the payment of his attorney's fees and expenses.

I understand that Mr. Logan has attempted to work out a settlement with you direct. As a matter of fact when Mr. Logan first approached my office, I suggested that he meet again with you in hopes of working it out between you all without the intervention of attorneys or the court system. Apparently, that has not been effected and therefore I now place you on the enclosed notice.

The letter meets the requirements of § 17.505. It expresses Logan's specific complaints (that the hay was not fit for feeding livestock because it had a high level of nitrates and that it had caused the death of Logan's cattle), advises Lester of the amount of actual damages which Logan had incurred ($12,659.00), and was sent at least 60 days before filing suit. Moreover, the letter meets the legislative objective of encouraging settlements and discouraging litigation. Appellant's eighth point of error is overruled.

By his first and second points of error, Lester contends that no evidence exists or alternatively, that insufficient evidence exists to support the jury's finding that he breached the implied warranty of fitness for a particular purpose because the hay was not fit for livestock consumption.

■ When we review a "no evidence" or legal sufficiency of the evidence point, we consider only the evidence and reasonable inferences that tend to support the jury's finding, and we disregard all evidence and inferences to the contrary. *Responsive Terminal Sys. Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989). We overrule the point and uphold the finding if we find any evidence to support the finding. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989).

■ When we review an "insufficient evidence" or factual sufficiency of the evidence point, we consider, weigh and examine all of the evidence which supports or undermines the jury's finding. *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only when we find that the evidence standing alone is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

■ When a seller, at the time of contracting, has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified, an implied warranty that the goods shall be fit for such purpose. TEX.BUS. & COMM.CODE ANN. § 2.315 (Vernon 1994).

■ Lester testified that he had been selling hay to Logan and his other neighbors for thirteen to fourteen years. Logan testified that he had consulted with Lester about other feeds for his cattle. Logan stated that he

relied on Lester's skill and judgment in getting hay that would be fit for his cattle to consume. According to Logan, Lester delivered the 28 round bales to a pasture and then drove over to where Logan was working and told him that the hay had a little mold on it where it had turned to sugar but that the hay would be all right. Logan testified that Lester stated, "it won't hurt your cattle," to which Logan said he responded, "you know more about it than I do."

Dr. Janecek, a local veterinarian, took eyeball and other tissue samples from the dead cows, samples of hay from the dead cows' stomachs, and a sample of hay from the remaining portion of the hay bale from which the cattle had eaten. Dr. Janecek submitted the samples to Dr. Reagor at the Texas Veterinary Medical Diagnostic Lab. Dr. Reagor tested the samples and found large amounts of nitrates in the samples. It was Dr. Reagor's opinion that the cows had died from nitrate poisoning and that the hay was not fit for livestock consumption. Dr. Pennington and Dr. Gottwald also opined that the hay was not fit to be fed to cattle.

After reviewing all of the evidence, we hold that the evidence is legally and factually sufficient to support the jury's finding that the hay was not fit for livestock consumption and that Lester breached the implied warranty of fitness for a particular purpose. Appellant's first and second points of error are overruled.

■ By his seventh point of error, Lester contends that the trial court erred by awarding Logan his attorney's fees because such an award violates § 17.505(d) of the Texas Business and Commerce Code. Lester contends that he offered $6,196.00 to settle the case. He argues that, since the jury found actual damages of $6,105.00 ($91.00 less than his settlement offer), Logan may not recover his attorney's fees.

Any person who receives notice of a consumer's DTPA claim under § 17.505(a) may tender to the consumer a written settlement offer within 60 days of receiving a demand letter. TEX.BUS. & COMM.CODE ANN. § 17.505(c) (Vernon Supp.1994). If rejected, the settlement offer may be filed with the court along with an affidavit certifying its rejection. TEX.BUS. & COMM.CODE ANN. § 17.505(d) (Vernon Supp.1994). If the amount tendered in the settlement offer is the same as or more than, or, if the court finds the amount to be "substantially the same" as, the actual damages awarded by the fact finder, the consumer may not recover an amount in excess of the amount tendered in the settlement offer or the amount of actual damages found by the fact finder, whichever is less. *Id.*

Logan's attorney sent the DTPA demand letter on February 12, 1991. Lester's affidavit certifying that Logan had rejected his settlement offers was filed with the Court. Copies of the settlement offer letters were attached to Lester's affidavit. One of the letters, dated April 12, 1991, stated that Lester would:

> pay to Mr. Logan [a] sum of $6,196.00 (plus attorney's fees paid by Mr. Logan through and including February 12, 1991), less the sum of $3,966.00 resulting in a total settlement value to Mr. Logan in the sum of $3,230.00 (plus Mr. Logan's above-described attorneys fees), to finally settle all claims in this matter.

A second letter, dated May 13, 1991, stated that:

> [Lester] reaffirms his previous offer of settlement in the amount of $6,196.00, plus reasonable and necessary attorney's fees incurred by Mr. Logan through the writing of your initial demand letter....

After reviewing the letters, we hold that the trial court did not err by rendering judgment for Logan for the amount of attorney's fees found by the jury. The April 12 letter reflects that Lester actually offered to settle the case for $3,230.00 ($6,196.00 less $2,966.00 [1]). The May 13 letter conditioned

---

1. According to the April 12, 1991 letter, Lester claimed that Logan owed him $3,966.00 for the following:

| | | |
|---|---|---|
| (a) | 41 bales of hay (at $35.00 per bale) | $1,435.00 |
| (b) | production costs for the hay | 931.00 |
| (c) | attorney's fees to collect the claim | 1,000.00 |
| | | $3,366.00 |

the $6,196.00 settlement offer on the terms offered in the April 12 letter. Section 17.505(d) does not apply to the facts of this case because the jury award was more than Lester's settlement offer of $3,230.00. Appellant's seventh point of error is overruled.

By his third point of error, Lester contends that the trial court erred by submitting a question to the jury about the implied warranty of fitness for a particular purpose because it was not stated in terms as close as possible to those actually used in the statute.

Question two asked the jury:

Was the hay in question unfit for the particular purpose of livestock consumption and if so, was this a producing cause of damages to Raymond "Butch" Logan?

In answering this question, you are instructed that the term "implied warranty of fitness for a particular purpose" means that the seller, at the time of contracting, had reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.

Answer "yes" or "no".

As long as matters are timely raised and properly requested as part of a trial court's charge, a judgment must be reversed when a party is denied proper submission of a valid theory of recovery or a vital defensive issue raised by the pleadings and evidence. *Exxon Corp. v. Perez,* 842 S.W.2d 629, 631 (Tex.1992).

The standard for review of a court's charge is abuse of discretion; and abuse of discretion occurs only when the trial court acts without reference to guiding rules or principles of law. *Texas Dept. of Human Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex. 1990). The court shall, whenever feasible, submit the charge to the jury with broad-form questions. *Id.;* TEX.R.CIV.P. 277. When liability is asserted based upon a provision of a statute or regulation, a jury charge should track the language of the provision as

closely as possible. *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex. 1994) (citing *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 937 (Tex.1980)).

Lester does not complain that he was denied submission of a vital defensive issue raised by the pleadings or evidence. Rather, he complains that jury question two could have tracked the language of the statute more closely. At the charge conference, Lester asked the court to submit the following question to the jury on breach of the implied warranty of fitness for a particular purpose:

Was a breach, if any, of an implied warranty of fitness for a particular purpose, if any, by Tom E. Lester a producing cause of damages, if any, to "Butch" Logan?

Lester also submitted instructions on course of dealing and usage of trade. The trial court refused to submit Lester's question and instructions to the jury. The trial court gave the statutory definition of the implied warranty of fitness for a particular purpose. A judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question. TEX.R.CIV.P. 278. After reviewing the submitted and the requested questions, we find no abuse of discretion. Appellant's third point of error is overruled.

By his fifth point of error, Lester contends that the trial court erred by failing to instruct the jury on "course of dealing" and "usage of trade." Lester contends that the evidence proved that the implied warranty of fitness for a particular purpose was excluded by the course of dealing and the usage of trade.

Logan contends that under TEX.BUS. & COMM.CODE ANN. § 2.316, any exclusions or modifications of the implied warranty of fitness must be in writing and conspicuous. Logan argues that, because there was no written exclusion or modification of the implied warranty of fitness, the trial court did

| | | |
|---|---|---|
| (d) | less amount owed to Logan for a lease agreement | − 400.00 |
| | | $2,966.00 |

The $3,966.00 amount is apparently incorrect. It appears Lester was only claiming that Logan owed him $2,966.00.

not err by failing to instruct the jury on usage of trade and course of dealing.

At the charge conference, Lester objected to the charge and submitted his requested jury questions and instructions. On a single page, Lester submitted 1) a question worded differently than Logan's question on implied warranty of fitness for a particular purpose, 2) definitions for the terms "implied warranty of fitness for a particular purpose" and "producing cause," and 3) instructions on "course of dealing" and "usage of trade." At the end of the group of instructions, question, and definitions, one space was provided for the trial court to grant and one space was provided for the trial court to refuse the group of requests. The group of requests was refused by the trial court.

In order to complain of the trial court's failure to submit an explanatory instruction, Lester must have requested and tendered a substantially correct instruction to the court in writing. *National Fire Ins. Co. v. Valero Energy Corp.*, 777 S.W.2d 501, 508 (Tex.App.—Corpus Christi 1989, writ denied); TEX.R.CIV.P. 278. If this is not done properly, appellant will have waived this complaint on appeal. *National Fire Ins.*, 777 S.W.2d at 508. Requested issues and instructions must be submitted separately. *Demler v. Demler*, 836 S.W.2d 696, 698 (Tex. App.—Dallas 1992, no writ); *National Fire Ins. Co.*, 777 S.W.2d at 508. A trial judge is not required to search through submitted requests for a special instruction.

We hold that Lester did not submit his requested instruction in a substantially correct form. The trial court was not required to go through the submitted group of requests related to the issue of implied warranty of fitness for a particular purpose and submit to the jury those requests which were proper and refuse those which were improper. *See Demler*, 836 S.W.2d at 698. Appellant's fifth point of error is overruled.

By his sixth point of error, Lester contends that the trial court reversibly erred by refusing to submit to the jury his tendered and requested instruction on mitigation of damages.

The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict. TEX. R.CIV.P. 277. When an instruction is requested and refused, the question on review is whether the instruction was reasonably necessary to enable the jury to render a proper verdict. *Berry Property Management Co. v. Bliskey*, 850 S.W.2d 644, 661 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.). The trial court has considerable discretion in submitting explanatory instructions and definitions; that is, the trial court has considerably more discretion when submitting instructions than it has in submitting jury questions. *Id.* The standard of review for a trial court's instruction is that an error on instruction or failing to instruct must have caused, or can be reasonably calculated to have caused, the rendition of an improper verdict. TEX.R.APP.P. 81(b)(1); *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986).

The mitigation doctrine requires that an injured party exercise reasonable care to minimize his damages. *City of San Antonio v. Guidry*, 801 S.W.2d 142, 151 (Tex. App.—San Antonio 1990, no writ). But the doctrine applies only if damages can be avoided with "only slight expense and reasonable effort." *Id.* The party who caused the loss bears the burden of proving lack of diligence on the part of the plaintiff, and the amount by which the damages were increased by the failure to mitigate. *Id.* (citing *Geotech Energy Corp. v. Gulf States Telecommunications & Information Sys., Inc.*, 788 S.W.2d 386, 390 (Tex.App.—Houston [14th Dist.] 1990, no writ)); *Pinson v. Red Arrow Freight Lines, Inc.*, 801 S.W.2d 14, 15–16 (Tex.App.—Austin 1990, no writ). Because Lester did not present evidence showing the amount of damages which were increased by Logan's failure to mitigate, we hold that the trial court did not reversibly err by refusing the instruction. *See Texas Dept. of Human Servs. v. Green*, 855 S.W.2d 136, 151 (Tex.App.—Austin 1993, writ denied); *Cocke v. White*, 697 S.W.2d 739, 744 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Appellant's sixth point of error is overruled.

578

By his ninth point of error, Lester contends that the trial court erred by failing to submit a comparative causation question to the jury. Comparative responsibility is generally not applicable to a cause of action brought under the DTPA. TEX.CIV. PRAC. & REM.CODE ANN. § 33.002(b)(2) (Vernon Supp.1994). The DTPA, however, provides exceptions to § 33.002(b)(2) and states that a comparative causation question is proper when recovery is sought for 1) death, 2) "personal injury other than mental anguish or distress associated with a violation of this subchapter that does not involve death or bodily injury", or 3) "damage to property other than the goods acquired by the purchase or lease that is involved in the consumer's action or claim if that damage arises out of an occurrence that involves death or bodily injury." TEX.BUS. & COMM.CODE ANN. § 17.50(b)(1)(A) (Vernon Supp.1994). We hold that the death of livestock does not come within the purview of these DTPA exceptions. Appellant's ninth point of error is overruled.

By his fourth point of error, Lester contends that the jury's answers to questions one and two fatally conflict. In question one, the jury found that Lester did not breach the warranty of merchantability, and in question two, the jury found that Lester breached the warranty of fitness for a particular purpose. These two implied warranties possess different elements. *See* TEX.BUS. & COMM.CODE ANN. §§ 2.314 & 2.315 (Vernon 1994). We find no fatal conflict. Appellant's fourth point of error is overruled.

We affirm the trial court's judgment.