Elias Edward BASS, Jr. and Bass
Automotive, Inc. d/b/a Safety
Brake Service, Appellants,

v.

CITY OF DALLAS, Texas, and Ed Bell
Construction Company, Appellees.

No. 07–99–0230–CV.

Court of Appeals of Texas,
Amarillo.

Aug. 31, 2000.

William L. Garrett, Dallas, for appellant.

Steven Snelson, Jack Conner, Fox, Conner, Rodriguez & Snelson, Kenneth R. Bennett, Asst. Dist. Atty., Dallas, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BOYD, Chief Justice.

Appellants ("Bass") brought suit on a variety of legal theories, all of which arise out of the reconstruction of the street near Bass' place of business. In the trial court, Bass alleged causes of action for inverse condemnation, negligence, breach of contract, trespass, and violations of their civil rights against the City of Dallas ("City"), as well as causes of action for negligence, breach of contract, and trespass against Ed Bell Construction Company ("Bell"). Bass chose to reserve the civil rights cause of action, in accordance with *Guetersloh v. State*, 930 S.W.2d 284, 289 (Tex.App.—Austin 1996, writ denied), *cert. denied*, 522 U.S. 1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998). The City moved for partial summary judgment, and the trial court granted its motion as to the claims for inverse condemnation and breach of contract. Bell moved for partial summary judgment, and the trial court granted its motion as to the claims for breach of contract and negligence. All remaining claims were dismissed. The trial court then entered a final judgment in favor of the City and Bell and Bass appealed, raising three points of error that the trial court erred in holding that: 1) Bass' access rights had not been materially and substantially impaired; 2) Bass was not a third party beneficiary to the contract between the City and Bell, and therefore could not enforce the contract; and 3) Bell was not negligent. For reasons we later recount, we affirm the judgment of the trial court.

### Standard of Review

For a party to prevail on a motion for summary judgment, the movant must conclusively establish the absence of any genuine question of material fact and that he or she is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c). When the defendant is the movant for summary judgment, he or she must conclusively negate at least one of the essential elements of the plaintiff's cause of action to succeed on a motion for summary judgment. Likewise, a defendant who conclusively establishes each element of an affirmative defense is entitled to summary judgment. *See Randall's Food Markets,*

*Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995).

The standards for reviewing a motion for summary judgment are well established and are as follows:

1.   The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2.   In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3.   Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*See Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex. 1985); *Howard v. INA County Mut. Ins. Co.,* 933 S.W.2d 212, 216 (Tex.App.—Dallas 1996, writ denied).

## Background

As a result of the aforementioned standard of review, the facts before this court favoring Bass will be taken as true, and every reasonable inference indulged in its favor.  In April of 1995, the City and Bell entered into a public improvement contract for paving, drainage, and improvements to Beckley Avenue from Eighth Street to Zang Boulevard.  To accomplish this, Beckley Avenue was barricaded from Zang Boulevard to Ninth Street; the area from Eighth Street to Ninth Street was used as a staging and storage area for the construction project.  Bass' business, Safety Brake Service, is on the corner of Beckley Avenue and Melba Street, which is approximately halfway between Eighth Street and Ninth Street.  Safety Brake's main entrance was from Beckley Avenue,

though access could be attained from Melba Street.  Between Eighth Street and Ninth Street, all northbound traffic was barricaded, and the southbound lane was made into a one-lane one-way street.  The result of this configuration was to require those that desired access to Bass' shop to turn south on Beckley Avenue from Eighth Street or take Zang Boulevard to Melba Street.  The former alternative was blocked, either by closing the intersection of Eighth Street and Beckley Avenue or by construction material and debris, approximately 25% to 50% of the time; however, the second alternative was never blocked or closed off.  Access to the shop from Melba Street, though difficult, was not impossible, and required a person to negotiate around a cement island in the middle of the parking lot, while avoiding the cars parked there.[1]

These facts gave rise to Bass' suit.  As we have noted, the City was granted partial summary judgment as to the claims for inverse condemnation and breach of contract, and Bell was granted partial summary judgment as to the claims for breach of contract and negligence.  All other claims were then dismissed.[2]  As a result, the only issue before this court is whether the trial court improperly granted summary judgment on the claims of inverse condemnation, breach of contract, and negligence for the respective defendants.

## Inverse Condemnation

In the first point of error, Bass alleges the trial court erred in granting the summary judgment motion of the City as to the inverse condemnation issue.

Article 1, section 17 of the Texas Constitution provides, in pertinent part:

---

1.   Safety Brake maintains 11 service bays. Nine service bays could be directly accessed from Beckley Avenue, while two service bays were directly accessible from Melba Street. From Melba Street, access to the remaining nine service bays could not be achieved without negotiating around the cement island and the cars parked in the lot.

2.   The civil rights claim has been properly reserved to the federal court.  All other claims pending in the state court were dismissed.

No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made....

■ In an inverse condemnation action, the complainant's property must be taken or damaged, within the meaning of the Texas Constitution. *See City of Dallas v. Ludwick,* 620 S.W.2d 630, 632 (Tex.Civ. App.—Dallas 1981, writ ref'd n.r.e.). To recover on an inverse condemnation claim, a property owner must establish that (1) the State or other governmental entity intentionally performed certain acts (2) that resulted in the taking, damaging, or destruction of the owner's property (3) for public use. *See Steele v. City of Houston,* 603 S.W.2d 786, 788–91 (Tex.1980); *City of Houston v. Crabb,* 905 S.W.2d 669, 673 (Tex.App.—Houston [14th Dist.] 1995, no writ). In the present case, neither element one or three is at issue. The crux of the appeal is whether or not Bass' property has been damaged under the Texas Constitution.

■ Whether property has been "damaged" under the constitution is a question of law. *See State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996). To be damaged under the Texas Constitution, access rights must have been materially and substantially impaired. *See Heal,* 917 S.W.2d at 9; *City of Waco v. Texland Corp.,* 446 S.W.2d 1, 2 (Tex.1969). Whether access rights have been materially and substantially impaired is also a question of law. *See State v. Schmidt,* 867 S.W.2d 769, 777 (Tex.1993), *cert. denied,* 512 U.S. 1236, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994) and 513 U.S. 812, 115 S.Ct. 64, 130 L.Ed.2d 21 (1994). As a general rule, mere impairment of access caused by construction activity is not compensable. *See id.* at 774. The underlying principle for this general rule is:

The inconvenience and damage which a property owner suffers from these temporary obstructions are incident to city life and must be endured. The law gives him no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made....

*City of Austin v. Avenue Corp.,* 704 S.W.2d 11, 12 (Tex.1986) (quoting *L–M–S, Inc. v. Blackwell,* 149 Tex. 348, 233 S.W.2d 286, 289 (1950), quoting in turn *Farrell v. Rose,* 253 N.Y. 73, 170 N.E. 498 (1930)).

However, there are limited circumstances in which the general rule is not applicable. It has been held that "... in order to show a material and substantial interference with access to one's property, it is necessary to show that there has been: 1) a total but temporary restriction of access; or 2) a partial but permanent restriction of access; or 3) a temporary limited restriction of access brought about by an illegal activity or one that is negligently performed or unduly delayed." *See Schmidt,* 867 S.W.2d at 775; *Avenue Corp.,* 704 S.W.2d at 13.

■ Bass alleged that its property was damaged by: 1) a total but temporary restriction of access; 2) a temporary limited restriction of access brought about by an illegal activity; and 3) a temporary limited restriction of access brought about by undue delay. However, Bass fails to acknowledge that the threshold inquiry is whether or not there has been a material and substantial impairment. *See Heal,* 917 S.W.2d at 9. *Schmidt* and *Avenue Corp.* hold that to have a material and substantial interference, it is necessary to show one of three elements. However, we do not read this to mean that showing one of those elements, in and of itself, establishes that a material and substantial interference has occurred. *See also City of San Antonio v. Guidry,* 801 S.W.2d 142, 148 (Tex.App.—San Antonio 1990, no writ) ("Such restrictions do not rise to the level of compensable takings unless they are material and substantial.... In the passage .. quoted earlier ..., the court did not say that undue delay by itself suffices

to establish a material and substantial interference").

The City contends that their actions did not cause a material and substantial interference with Bass' property rights; rather, the City contends that their actions merely resulted in a diversion of traffic. "It is well settled that damages to a condemnee's business which result merely from traffic being required to travel a more circuitous route to reach a condemnee's property are not compensable. The question of whether there has been a material and substantial impairment of access or whether there exists merely the issue of circuity of travel is a question of law, not of fact." *Schmidt*, 867 S.W.2d at 776–77 (quoting *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex.1988)). The court also concluded that Texas courts have never allowed recovery in an inverse condemnation case for damages resulting from a diversion of traffic or circuity of travel. *See id.* at 774. From the *Schmidt* decision and the authorities cited therein, we believe that any damages resulting from a diversion of traffic are, as a matter of law, not material and substantial. *See also City of Grapevine v. Grapevine Pool Road Joint Venture*, 804 S.W.2d 675, 678 (Tex.App.—Fort Worth 1991, no writ) ("damages which result to property by virtue of traffic being required to travel a more circuitous route to reach the property in question are not compensable and are not the result of a material and substantial impairment of access").

Because the City was the movant for summary judgment, it had the burden of proving that Bass cannot prove an essential element of its claim. To achieve this, the City produced evidence that Melba Street was never closed. It also produced evidence that, during the times that Beckley Avenue was blocked off, a person could travel on either Eighth or Ninth west for one block to Zang Boulevard, then south

or north, respectively, for one block to Melba Street, then into Bass' business. In fact, Bass' own accountant said, "[c]oming down Zang and going up Melba was clear sailing." Bass has not controverted any of the evidence that the City has put forth on this issue. Thus, this case is analogous to those cases that have held that a city may completely impair a means of access, so long as another suitable means of access is available. *See Archenhold Auto. Supply Co. v. City of Waco*, 396 S.W.2d 111, 114 (Tex.1965); *Grapevine Road Joint Venture*, 804 S.W.2d at 678. In *Heal*, the court ultimately relied on *Archenhold*, believing that its outcome would have been the same under the "more exact" "material and substantial" test. *Heal*, 917 S.W.2d at 11. The court, elucidating the holding of *Archenhold*, held that "[d]amages for *diminishment* of the means of access is not compensable provided suitable access remains." *Id.* at 11 (emphasis in original).

▮ Bass directs our attention to *City of San Antonio v. Guidry* as support for the proposition that damages from a diversion of traffic, during the time that a project is unduly delayed, is compensable. *See Guidry*, 801 S.W.2d at 147. In *Guidry*, the court of appeals held that the tendered jury instruction from the city was an incorrect statement of the law.[3] We agree that the proposed instruction was incorrect; however, we decline to follow the dicta from that decision. Whether there has been a restriction of access depends upon the specific facts of a case. A diversion of traffic presents the question whether the restriction of access is material and substantial, and thus compensable. The *Guidry* decision distinguished a diversion of traffic claim in a permanent restriction of access case (*i.e.*, non-compensable) from a diversion of traffic claim in a temporary restriction of access case (*i.e.*, should be compensable). *See id.* at 147. We fail to see any meaningful justification

---

3. The proposed instruction read as follows: "You are instructed that diversion of traffic resulting in the necessity of vehicles using

circuitous routes does not constitute a temporary limited restriction of access." *Guidry*, 801 S.W.2d 142, 147 n. 6.

for treating the two situations differently. Further, the *Guidry* court failed to cite any authority for their position, relying instead upon what they determined was the *implicit* holding of *Avenue Corp. See Id.* at 147. Our independent research has failed to uncover any other court from any jurisdiction that has allowed compensation in an inverse condemnation case for a diversion of traffic during "undue delay." On the contrary, our very own Texas Supreme Court, post-*Guidry* and post-*Avenue Corp.*, has said:

> Thus, we have often disallowed, and *never* allowed, recovery in an inverse condemnation case for damages resulting from a diversion of traffic or a circuity of travel.

*Schmidt,* 867 S.W.2d at 774 (emphasis added). Thus, we believe, the established rule is that damages from impaired access from a diversion of traffic or circuity of travel are not compensable.

The City offered uncontroverted evidence that Bass had suitable access other than from Beckley Avenue. Bass has not controverted this. As a result, the City has proven that Bass cannot prove an essential element of the claim; specifically, that Bass cannot prove that its property has been materially and substantially impaired. Because this case is really a "diversion of traffic" case, rather than an impaired access case, Bass has not suffered damages compensable under the Texas Constitution. As a result, Bass' first point is overruled.

**Third Party Beneficiary**

In its second point of error, Bass alleges the trial court erred in granting the summary judgment motions of both Bell and the City as to the breach of contract issue. Bass concedes that they are not a party to the contract; therefore, its only opportunity to enforce the contract is as a third party beneficiary.

▆▆▆ For a third party beneficiary to recover on a contract, they must show that the contracting parties intended to secure some benefit to that third party and that the contracting parties entered into the contract directly and primarily for the benefit of the third party. *See MCI Telecommunications Corp. v. Texas Utilities Electric Co.,* 995 S.W.2d 647, 651 (Tex. 1999); *Esquivel v. Murray Guard, Inc.,* 992 S.W.2d 536, 543 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). To qualify as one for whose benefit the contract was made, it must be shown that the third party was either a donee or creditor beneficiary, rather than merely an incidental beneficiary, of the contract. *See MCI Telecommunications,* 995 S.W.2d at 651; *Republic Nat'l Bank of Dallas v. National Bankers Life Ins. Co.,* 427 S.W.2d 76, 80 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.). One is a donee beneficiary if the performance promised will come to the third party as a pure donation. *See MCI Telecommunications,* 995 S.W.2d at 651. If the performance promised will come to the third party in satisfaction of a legal duty owed to him by the promisee, he is a creditor beneficiary. *Id.* at 651. This duty can be an "indebtedness, contractual obligation or other legally enforceable commitment" owed to the third party. *Id.* at 651 (quoting *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 11 (Tex.App.—Dallas 1988, writ denied)).

▆▆▆ In determining whether a third party may enforce a contract, courts look only to the intent of the contracting parties. *See MCI Telecommunications,* 995 S.W.2d at 651. Courts will not create a third-party beneficiary contract by implication. *Id.* at 651; *MJR Corp.,* 760 S.W.2d at 12. The intention to confer a direct and primary benefit to a third party must be clearly and fully spelled out or enforcement of the contract by a third party must be denied. *See MCI Telecommunications,* 995 S.W.2d at 651. Further, there is a presumption that the parties contracted only for themselves unless it "clearly appears" that the contracting parties intended to secure the benefit for the

third party. *See id.* at 651; *Esquivel,* 992 S.W.2d at 543. A corollary to this rule is that there is a presumption against third-party beneficiary recovery. *See MCI Telecommunications,* 995 S.W.2d at 651. Furthermore, any doubts are resolved against a finding of the existence of a third-party beneficiary contract. *Esquivel,* 992 S.W.2d at 543.

■ "It is well settled that one claiming to be a third party beneficiary succeeds or fails according to the provisions of the contract sued upon." *Greenville Independent School Dist. v. B & J Excavating, Inc.,* 694 S.W.2d 410, 412 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (quoting *Carnes Corp. v. Thermal Supply, Inc.,* 359 S.W.2d 99, 100 (Tex.Civ.App.—Houston 1962, no writ)). As such, this court must look to the contract between the City and Bell to determine if Bass may enforce this contract. Bass urges this court to accept a third party beneficiary claim on two grounds: 1) paragraph I of the contract references "Attachment I." "Attachment I" calls for the contractor to submit a traffic control plan, one of the reasons for having a traffic control plan was to maintain access to businesses, and this traffic control plan was never submitted; and 2) the contract was not completed in a timely manner, in violation of paragraph II of the contract.

After reviewing the contract, we cannot say that Bass is anything more than an incidental beneficiary. The contract calls for paving, storm drainage, and water improvements on Beckley from Eighth Street to Zang Boulevard. Bass' place of business is not even in this construction area. Because there is a presumption against finding the existence of a third party beneficiary relationship, Bass must overcome this presumption. It has not.

Bass essentially is asking this court to confer third-party beneficiary status based on the traffic control plan. The language of the contract does not "clearly appear" to support the notion that the traffic control plan portion of the contract was entered into to directly and primarily benefit Bass. While Bass will undoubtedly receive some benefit from this plan, we hardly think that the contract was entered into directly and primarily for the benefit of a place of business outside of the actual construction site. Neither does the plain language of the contract support Bass' contention that the liquidated damages clause (paragraph II) of the contract is a direct and primary benefit that was entered into for Bass' benefit. Again, a business near a construction site would receive some benefit from a timely completed project; however, this is nothing more than an incidental benefit. Bass has not shown that there was a legal duty *owed* to it. Bass only has shown that it was somewhat affected by the contract. There is no language in the contract that defeats the presumption that the parties contracted only for themselves. As a result, Bass' second point of error is overruled.

### Negligence

■ In its third point of error, Bass alleges the trial court erred in granting the summary judgment motion of Bell as to the negligence issue. Bass alleges that Bell was negligent in the performance of their contract by materially and substantially impairing access to Bass' place of business during the construction period, by unduly delaying completion of the construction, and by failing to submit a traffic control plan. In pursuing this claim, Bass argues that a breach of contract may be actionable in tort. We do not disagree; in fact, depending on the circumstances, a party's acts may breach duties in tort or contract alone or simultaneously in both. *See Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). Generally speaking, if a contractual duty is negligently performed, causing only economic loss, only a breach of contract action may be maintained, and an action in tort for negligence is precluded. *See Estate of Arlitt v. Paterson,* 995 S.W.2d 713, 719 (Tex.App.—San Antonio 1999, pet. denied).

In distinguishing between contract and tort actions, it is necessary to analyze both the source of the alleged duty and the nature of the loss. *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998). The Texas Supreme Court provided the following guidelines for determining the source of the duty:

> [i]f the defendant's conduct ... would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct ... would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

*Southwestern Bell Telephone Company v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991). We agree with other courts that have held that when a party must prove the contents of its contract and must rely on the duties created therein, the action is "in substance an action *on the contract*, even though it is denominated an action for negligent performance of a contract." *Id.* at 496 (Gonzalez, J., concurring) (quoting *Bernard Johnson, Inc. v. Continental Constructors, Inc.*, 630 S.W.2d 365, 368 (Tex.App.—Austin 1982, writ ref'd n.r.e.) (emphasis in original)); *see also CBI NA–CON, Inc. v. UOP Inc.*, 961 S.W.2d 336, 340 (Tex. App.—Houston (1st Dist.) 1997, writ denied) (emphasis in original).

It is also instructive for the court to examine the nature of the injury sustained by Bass. When the loss is only the economic loss to the subject of the contract itself, the action sounds in contract alone. *Reed*, 711 S.W.2d at 618. " 'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—*without any claim of personal injury or damage to other property* ....' " *Thomson v. Espey Huston & Associates, Inc.*, 899 S.W.2d 415, 421 (Tex.App.—Austin 1995, no writ) (quoting *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346, 350–51 (1990)) (quoting in turn *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (Ill.1982) (emphasis in original)).

After examining both the nature of the loss and the source of the duty, we hold that Bass can only maintain an action in contract. Bass suffered only an economic loss of profits, and it must prove the contents of the contract and rely on the duties therein to succeed on the theories of unduly delaying the construction project and failing to provide a traffic control plan. As a result, Bass cannot maintain an action in negligence and its entitlement to damage would, of necessity, depend upon a contractual claim. However, pursuant to our discussion of third-party beneficiary law, Bass is unable to recover as it is not a party to the contract between the City and Bell, nor is it a third party beneficiary to that contract.

Moreover, assuming that an action could be maintained in tort for the alleged material and substantial impairment of access, we have held that no such impairment existed. In Bass' inverse condemnation case against the City, we held, as a matter of law, that no material and substantial impairment of access occurred from the diversion of traffic. The uncontroverted evidence is that Bell and the City only diverted traffic during the construction period. If the City did not materially and substantially impair Bass' access, then, *a fortiori*, Bell did not materially and substantially impair the access rights of Bass. As a result, Bass cannot maintain an action for negligently performing the contract by materially and substantially impairing access during the construction period. As a result, Bass' point of error three is overruled.

Accordingly, the judgment of the trial court is affirmed.