# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00850-CV

**A&H Properties Partnership, Appellant**

**v.**

**GPM Engineering, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-GN-12-003436, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this case involving a chain of construction contracts, A&H Properties Partnership appeals from the trial court's order granting summary judgment for GPM Engineering. A&H had contracted with Bell Industry, Inc. to design and install energy-efficient improvements, including a geothermal loop, for A&H's warehouse and office project. Bell, in turn, contracted with GPM to design the geothermal loop. A&H did not have a contract with GPM.

After filing a suit against Bell for fraud and breach of contract, which ultimately settled, A&H sued GPM, alleging that GPM was negligent in its design of the geothermal loop and that GPM's negligence caused it damages in "the amounts it cost to construct the system." GPM argued in its summary-judgment motion that the economic-loss rule barred A&H's negligence claim because A&H's alleged injury consisted only of the economic loss associated with installation of a geothermal loop, which is the subject of the contract under which GPM provided its services.

The trial court granted summary judgment on this ground. For the reasons set forth below, we will affirm.

## ANALYSIS

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). GPM moved for traditional summary judgment, asserting that A&H's negligence claim was barred as a matter of law by the economic-loss rule. A defendant moving for summary judgment on an affirmative defense has the burden of conclusively establishing that defense. *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003). When reviewing a grant of a traditional summary-judgment motion, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating*, 164 S.W.3d at 661. Summary judgment is proper when the evidence shows that there are no genuine disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

On appeal, A&H contends that the trial court erred by applying the economic-loss rule to bar A&H's negligence claim against GPM because A&H and GPM are contractual strangers and "because GPM, as a design professional, had an independent duty to exercise skill and care commensurate with the requirements of its profession." GPM urges that *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234 (Tex. 2014), which the Texas Supreme Court issued after briefing was complete in this case, controls our disposition of this appeal. We agree.

The economic-loss rule limits the recovery of purely economic damages that are unaccompanied by injury to the plaintiff or its property in actions for negligence. *LAN/STV*,

2

435 S.W.3d at 235; *see also Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) ("[P]arties may be barred from recovering in negligence or strict liability for purely economic losses."). "Economic loss" has been defined as "'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—*without any claim of personal injury or damage to other property . . . .*'" *Bass v. City of Dallas*, 34 S.W.3d 1, 9 (Tex. App.—Amarillo 2000, no pet.) (quoting *Thomson v. Espey Huston & Assocs.*, 899 S.W.2d 415, 421 (Tex. App.—Austin 1995, no writ)). By limiting recovery of economic damages, the rule serves an important "boundary-line function," separating the law of torts from the law of contracts. *LAN/STV*, 435 S.W.3d at 240 (quoting Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 546 (2009)).

The economic-loss rule generally precludes the recovery in tort of purely economic losses in actions for negligent performance of contractual services. *Id.* at 243 (collecting cases). When the doctrine is applicable, a plaintiff cannot maintain a negligence cause of action against a defendant when its damages are only for economic losses caused by the failure to perform a contract. *Bass*, 34 S.W.3d at 8. The economic-loss rule not only applies to bar claims against those in a direct contractual relationship but also applies to preclude tort claims between parties who are not in contractual privity. *See id.* at 8-9; *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 695 (Tex. App.—Eastland 2002, no pet.); *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 106-07 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

This case arises from a construction project defined by contracts among the parties involved in the project. Construction-project contracts are typically vertical in nature: the owner

3

contracts with a general contractor, the general contractor contracts with a subcontractor, and so on. *LAN/STV*, 435 S.W.3d at 246. Here, the same vertical chain of contracts is presented by the record. A&H contracted with Bell to install a geothermal loop field and an array of solar panels as part of the construction of a new frozen-storage and distribution facility on its property in Austin. Bell then subcontracted with GPM to perform a part of the construction project: the engineering design of a geothermal loop. A&H and GPM were not in direct contractual privity. A&H asserted that the geothermal loop was defectively designed and did not perform as promised, among other problems relating to the construction project. A&H sued Bell for deficient contractual performance, and that case resulted in a confidential settlement. A&H then sued GPM in Travis County for negligence.

When deciding whether the economic-loss doctrine is applicable, we examine both the source of the defendant's duty (considering whether the duty arose out of a contract or whether the duty was imposed by law, independent of the contract) and the nature of the injury (considering whether the economic loss was only "to the subject of a contract itself"). *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). Where the only duty between parties arises from a contract, a breach of that duty will usually sound only in contract, not in tort. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

A&H emphasizes that it is a contractual stranger to GPM, having no direct contract with GPM. A&H asserts that GPM, as a design professional, had an independent duty to exercise skill and care commensurate with the requirements of its profession. A&H further asserts that it is the breach of that duty upon which A&H's claim is based, not any underlying contract. According

4

to A&H, this independent duty is imposed upon design professionals by virtue of their profession and, along with the lack of contractual privity, makes the economic-loss doctrine inapplicable. We need not address the scope of any duty that design professionals may or may not generally have because the Texas Supreme Court recently clarified in a similar factual scenario that the availability of contractual remedies in a vertical chain of contracts on a construction project precludes tort recovery when no personal injury or property damage is alleged. *See LAN/STV*, 435 S.W.3d at 248-49 (concluding economic-loss rule precluded general contractor from recovering delay damages from owner's architect, although contractor and architect were contractual strangers, because economic losses should be allocated by contract where feasible). The record before us establishes that GPM, as a subcontractor, was performing services as part of the overall construction project based on its contract with the general contractor, Bell. GPM's duty to perform work on A&H's property arose out of that construction subcontract, and no other duty or relationship between GPM and A&H is presented by this record.

A&H further contends that applying the economic-loss rule in this situation would render Section 150.002(a)-(b) of the Texas Civil Practice and Remedies Code meaningless because the existence of a contract to provide design services would always foreclose the imposition of an independent duty on design professionals. We disagree. A plain reading of Section 150.002 indicates that it simply specifies that (1) a certificate of merit must be obtained by a plaintiff before a licensed or registered professional may be sued "for damages arising out of the provision of professional services" and (2) the affidavit submitted by the plaintiff must set forth for each theory of recovery "the negligence, if any, or other action, error, or omission of the licensed or registered

5

professional in providing the professional service." Tex. Civ. Prac. & Rem. Code § 150.002(a)-(b); *see also CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n*, 390 S.W.3d 299, 301 (Tex. 2013) (explaining that Section 150.002 serves to deter meritless claims). It does not create or negate an independent duty imposed by law on design professionals. Nor does it speak to the applicability of the economic-loss rule in a given situation. Applying the economic-loss rule in this case does not necessarily mean that a plaintiff suing a licensed professional in a situation involving personal injury or property damage would not be subject to Section 150.002's requirement to obtain a certificate of merit, even if that professional provided services under a contract.

As part of the analysis of the substance of this claim and the application of the economic-loss rule in this situation, we also look to see whether the harm asserted by A&H in its negligence case against GPM arises from contract or from other injury to A&H or its property. *LAN/STV*, 435 S.W.3d at 245-46; *Formosa*, 960 S.W.2d at 45. A&H described the harm it suffered as a result of GPM's actions in purely contract-damage terms. A&H asserted that its damages caused by GPM's negligence were "the amounts it cost to construct the system designed by GPM Engineering, . . . which Plaintiffs were forced to abandon." A&H did not assert or establish any personal injury or property damage separate from the economic loss of failing to receive the benefit of its bargain with its general contractor, Bell. The record indicates no other injury to A&H or its property, other than the above-described economic loss.

Application of the economic-loss rule is particularly appropriate here, where permitting A&H to sue GPM for economic loss would disrupt the risk allocations that A&H negotiated with Bell, and that Bell, in turn, negotiated with GPM. *See LAN/STV*, 435 S.W.3d at 246

(recognizing that construction projects operate by agreements among the participants and noting that it is "beyond argument that one participant on a construction project cannot recover from another . . . for economic loss caused by negligence"). In general, it is preferable that parties assess and allocate their risk contractually, rather than necessitating courts to engage in a judicial assignment of liability after the harm is done. *Id.* at 241. The record demonstrates that the parties did so in this case through their chain of contracts relating to the construction project. A&H required Bell to maintain a performance-guarantee bond of $240,000, among other contractual provisions protecting A&H, including indemnity. GPM limited its liability with Bell through a contractual provision in its contract with Bell and also agreed to indemnify Bell in certain circumstances. Holding GPM liable to A&H through a separate tort action would judicially renegotiate the private risk allocations to which the parties contractually bound themselves.

In sum, A&H is seeking to recover for economic losses sustained by virtue of GPM's allegedly negligent performance of its contract with Bell. Because the economic-loss rule precludes such a claim, GPM is entitled to summary judgment.

**CONCLUSION**

Having concluded that the economic-loss rule precludes A&H's claim for negligence on the facts presented by this case, we affirm the trial court's order granting summary judgment in favor of GPM.

_____

Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed:   December 23, 2015