**Opinion filed January 11, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00202-CV

_____

## IN THE INTEREST OF A.D., I.D., AND A.D., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 9820-CX**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the father, Appellant,[1] to his three children, A.D.1.,[2] I.D., and A.D.2.  On appeal, Appellant presents three issues in which he challenges the legal

---

[1]The trial court also terminated the parental rights of the children's mother.  No appeal has been filed on behalf of the mother.

[2]The oldest and youngest children have the same initials.  We will refer to the oldest child as A.D.1., and the youngest child as A.D.2.

and factual sufficiency of the evidence to support the trial court's findings. We affirm the trial court's order of termination.

*Procedural Background, Termination Findings, and Standards*

In 2019, the Department of Family and Protective Services (the Department) filed a suit affecting the parent-child relationship (SAPCR) in which it sought termination of the parental rights of Appellant and the mother to their three children, ages four, three, and one at the time. In 2021, the trial court entered a final order in which it appointed the Department and the mother as joint managing conservators and Appellant as possessory conservator with limited rights and denied all other relief. In April of 2023, the Department filed a petition to modify the 2021 order. In the petition to modify, the Department alleged termination grounds pursuant to Sections 161.001(b) and 161.004 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023), § 161.004 (West 2022).[3]

In July of 2023, the trial court conducted a hearing on the petition to modify and signed the order at issue in this appeal that terminated Appellant's and the mother's parental rights. The trial court found, pursuant to Section 161.004, that the circumstances of the children, parent, or other party affected by the order denying termination had materially and substantially changed since the date that the order was rendered. *See* FAM. § 161.004(a)(2). The trial court also found by clear and convincing evidence that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which

---

[3]Section 161.004 sets out the requirements for termination of "the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship." FAM. § 161.004(a). Section 161.004 has been regarded as a mechanism through which the Department may, upon proving a material change in the circumstances of an affected party, defeat a parent's claim of res judicata when the Department seeks termination after a prior petition seeking termination was denied. *In re K.G.*, 350 S.W.3d 338, 349 (Tex. App.—Fort Worth 2011, pet. denied).

endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (3) failed to support the children in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition. *See id.* § 161.001(b)(1)(D), (E), (F). Finally, the trial court found by clear and convincing evidence that termination of Appellant's parental rights is in the best interest of the children. *See id.* § 161.001(b)(2).

Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's findings under subsections (D), (E), and (F) and its finding that termination was in the children's best interest. The termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001(b). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U),[4] and that termination is in the best interest of the child. *Id.* § 161.001(b)(2).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). "Bearing in mind the required appellate deference to the factfinder, we look at all the evidence in the light most favorable to the finding, assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a

---

[4]We note that the legislature recently amended Section 161.001 to include additional requirements for trial courts in termination suits filed by the Department of Family and Protective Services and a new ground for termination that relates to convictions for solicitation of a minor; however, these amendments only apply to suits filed on or after September 1, 2023. Act of May 26, 2023, 88th Leg., R.S., ch. 728, §§ 1, 3, 2023 Tex. Sess. Law Serv. 1770, 2177 (codified at FAM. § 161.001(b)(1)(V)); Act of May 29, 2023, 88th Leg., R.S., ch. 675, §§ 1, 8, 2023 Tex. Sess. Law. Serv. 1646–47 (codified at FAM. § 161.001(f), (g)). The original petition to terminate the parent-child relationship in this case was filed prior to September 1, 2023. We therefore apply the law in effect on the date the suit was filed.

reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard undisputed facts that do not support the finding," and the factfinder is the sole arbiter of the witnesses' credibility and demeanor. *Id.* (quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)) (internal quotation marks omitted).

In assessing whether the evidence is factually sufficient, we weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Giving due deference to the finding, we determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.— Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513. But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may constitute evidence illustrating that

termination is in the child's best interest. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).

*Evidence Presented at Trial*

At the bench trial on the Department's petition to modify the 2021 order, the Department called eight witnesses, including the children's foster parents, Rachal Rodarte and Teresa McElvaney. The children's therapists, two Department employees, Appellant, and the mother also testified.

The record reflects that the Department's involvement in the underlying case began in April of 2019 after a police officer found the children playing unsupervised in the middle of the street around 8:00 a.m., in soiled diapers and without clothes or shoes. A.D.1. was four years old, I.D. was three, and A.D.2. was one year old at the time. When the officer took the children back home, no one answered the door, so law enforcement made entry and found Appellant and the mother asleep. A.D.1. would later describe this incident to Rodarte as his attempt to run away. He explained that he intended to find "his Nana to get help," and I.D. and A.D.2. followed him.

During a home visit in October of 2019, Appellant and his girlfriend appeared under the influence of an unknown substance, and there was cat feces, trash, dirty diapers, rotting food, exposed wires, choking hazards, and empty beer bottles throughout the home. The children were locked in a room equipped with a door alarm, and the bedroom smelled like urine. They were only wearing underwear, were dirty, and were asking to leave the room but were not allowed. After multiple attempts to maintain the parent-child relationship, the Department sought removal in November of 2019.

After the trial court denied the Department's request to terminate Appellant's and the mother's parental rights in November of 2021, the children were placed with

Rodarte and McElvaney. Appellant was appointed possessory conservator, granted weekly supervised visits, and ordered to attend family counseling sessions with his children. Since being placed with Rodarte and McElvaney, the children began trauma counseling sessions, and disclosed that Appellant physically and sexually abused them.

Specifically, in December of 2021, when A.D.1. was seven years old, he told Rodarte that Appellant inappropriately touched his penis. He then outcried to his therapist and would sporadically mention Appellant touching his penis thereafter. A.D.1. also told Rodarte and McElvaney that Appellant picked him up by the neck and threw him across the room, beat him with a belt, and periodically locked him and his siblings in a room.

Five-year-old I.D. likewise revealed that Appellant touched her vagina inappropriately. She was masturbating in the living room in front of her brothers and told McElvaney and Rodarte that Appellant touched her privates. According to McElvaney, I.D. "seemed confused about why it was inappropriate for her father to touch her." She reiterated her outcry of sexual abuse to her therapist. I.D. further recalled being locked in a hot, confined space while living with Appellant, and frequently being hungry without access to the food in the house.

The Department moved to suspend Appellant's visits based on A.D.1.'s and I.D.'s outcries, which was granted on August 24, 2022 after an evidentiary hearing. On the way to the hearing, A.D.1. projectile vomited in the car after learning of their destination. He only calmed down when Rodarte and McElvaney told him he would not be testifying.

A.D.1. would also sometimes vomit on the way to family therapy sessions with Appellant, then cry, vomit, and hyperventilate afterwards. All the children became stressed, defiant, and irritable before and after visits with their parents. Once

Appellant's visits and family therapy sessions were suspended, A.D.1.'s stress-induced vomiting stopped, and I.D. has not masturbated in the living room since then.

*Endangerment*

In Appellant's first and second issues, he challenges the legal and factual sufficiency of the evidence to prove grounds (D), (E), and (F). Although only one statutory ground is necessary to support termination, appellate courts must address a parent's challenges to a trial court's findings under subsections (D) or (E), as they may have implications for the parent's rights to other children. *See* FAM. § 161.001(b)(1); *In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law considerations with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds). If we conclude that the evidence is legally and factually sufficient to uphold the trial court's finding as to either subsection (D) or (E), we need not address the arguments raised by Appellant as to the remaining subsection. *See* FAM. § 161.001(b)(1); TEX. R. APP. P. 47.1. But when the evidence pertaining to both subsections (D) and (E) is interrelated, as it is here, we may conduct a consolidated review of the trial court's endangerment findings. *See In re A.L.S.*, 660 S.W.3d 257, 263–64 (Tex. App.—San Antonio 2022, pet. denied); *In re J.D.*, 436 S.W.3d 105, 114 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.).

The statutory endangerment grounds require clear and convincing proof that the parent has: "(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," or "(E) engaged in conduct or knowingly placed the child with persons

7

who engaged in conduct which endangers the physical or emotional well-being of the child." FAM. § 161.001(b)(1)(D), (E); *In re S.M.R.*, 434 S.W.3d 576, 585 (Tex. 2014). "'Endanger' means 'to expose to loss or injury; to jeopardize.'" *S.B. v. Texas Dep't of Fam. & Protective Servs.*, 654 S.W.3d 246, 253 (Tex. App.—Austin 2022, pet. denied). The term "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012).

The relevant inquiry under subsection (D) is whether the child's environment prior to removal, including the child's living conditions and conduct by parents or others in the home, endangered the child's well-being. *S.B.*, 654 S.W.3d at 253. "Inappropriate, abusive, or unlawful conduct by persons who live in the child's home . . . is part of the 'conditions or surroundings' of the child's home under subsection (D)." *Id.* at 253–54 (quoting *V.P. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-19-00531-CV, 2020 WL 544797, a *10 (Tex. App.—Austin Feb. 4, 2020, no pet.) (mem. op.); *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.)). The endangering conditions must be experienced by the child, not anticipated. *See In re J.W.*, 645 S.W.3d 726, 749 (Tex. 2022). "The suitability of a child's living conditions and the conduct of parents or others in the home are relevant to a Subsection (D) inquiry." *Id.* (citing *In re R.S.-T.*, 522 S.W.3d 92, 108–09 (Tex. App.—San Antonio 2017, no pet.)).

Endangerment under subsection (E), in contrast, focuses on the parent's conduct, and whether the endangerment of the child's well-being was the direct result of the parent's acts, omissions, or failures to act. *In re M.G.*, 585 S.W.3d 51, 57 (Tex. App.—Eastland 2019, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*; *In re D.T.*, 34 S.W.3d

625, 634 (Tex. App.—Fort Worth 2000, pet. denied). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

Endangerment evidence can be grouped into six categories: (1) sexually transmitted disease; (2) sexual abuse; (3) criminal convictions; (4) alcohol and drug abuse; (5) neglect; and (6) domestic abuse. *S.M.R.*, 434 S.W.3d at 585; *see also In re I.R.H.*, No. 11-17-00070-CV, 2017 WL 3994682, at *2 (Tex. App.—Eastland Sept. 8, 2017, no pet.) (Evidence of sexual abuse of one child is sufficient to support a finding of endangerment with respect to other children.) (citing *In re R.W.*, 129 S.W.3d 732, 742 (Tex. App.—Fort Worth 2004, pet. denied)).

Appellant argues that the trial court erroneously admitted the hearsay statements of A.D.1. and I.D. that he physically and sexually abused them, thereby asking us to disregard said statements in assessing the legal and factual sufficiency of the evidence. We review a trial court's rulings admitting or excluding evidence for an abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020); *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its ruling is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). An appellate court may not substitute its judgment for that of the trial court merely because it would have ruled differently under the same circumstances. *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016); *Low*, 221 S.W.3d at 619–20.

Section 104.006 of the Family Code permits the introduction of otherwise inadmissible hearsay statements of a child twelve years of age or younger that describes alleged abuse against the child if the trial court finds that the statements are reliable based on the time, content, and circumstances thereof, and: (1) the child testifies or is available to testify; or (2) admitting the statement in lieu of the child's

testimony is necessary to protect the child's welfare.  FAM. § 104.006 (West 2019). The term "abuse" as defined in Section 261.001 of the Family Code includes "sexual conduct harmful to a child's mental, emotional, or physical welfare," including conduct that constitutes the offense of continuous sexual abuse of a young child or disabled individual, indecency with a child, a sexual assault, or aggravated sexual assault.  FAM. § 261.001(1)(E); *see also* TEX. PENAL CODE ANN. §§ 21.02, 21.11, 22.011, 22.021 (West 2019 & Supp. 2023).

Our sister courts have recognized that Section 104.006 is the civil analogue of Article 38.072 of the Code of Criminal Procedure and use the same or a similar type of analysis to determine reliability.  *See In re M.R.*, 243 S.W.3d 807, 813 (Tex. App.—Fort Worth 2007, no pet.); *In re E.A.K.*, 192 S.W.3d 133, 147 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *In re P.E.W.*, 105 S.W.3d 771, 775–76 (Tex. App.—Amarillo 2003, no pet.) (using similar factors, such as knowledge of difference between truth and lies, whether the statements were volunteered or resulted from questioning, whether a child of that age would have knowledge about the matters described, and corroboration).  Outcry reliability is determined on a case-by-case basis, considering the circumstances of the outcry rather than the abuse itself.  *Sanchez v. State*, 354 S.W.3d 476, 484–85, 487–88 (Tex. Crim. App. 2011); *Buentello v. State*, 512 S.W.3d 508, 518 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).  Indicia of reliability that a trial court may consider under Article 38.072 include whether: (1) the child victim testifies at trial and admits making the out-of-court statement; (2) the child understands the need to tell the truth and has the ability to observe, recollect, and narrate; (3) other evidence corroborates the statement; (4) the child made the statement spontaneously in his own terminology or whether evidence exists of prior prompting or manipulation by adults; (5) the child's statement is clear and unambiguous and rises to the needed level of certainty; (6) the

statement is consistent with other evidence; (7) the statement describes an event that a child of the victim's age could not be expected to fabricate; (8) the child behaves abnormally after the contact; (9) the child has a motive to fabricate the statement; (10) the child expects punishment because of reporting the conduct; and (11) the accused had the opportunity to commit the offense. *Buentello*, 512 S.W.3d at 518 n.4 (quoting *Buckley v. State*, 758 S.W.2d 339, 343–44 (Tex. App.—Texarkana 1988), *aff'd on other grounds*, 768 S.W.2d 357 (Tex. Crim. App. 1990); *Torres v. State*, 424 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *see also Hernandez v. State*, No. 11-18-00232-CR, 2020 WL 5490719, at *2 (Tex. App.—Eastland Sept. 11, 2020, no pet.) (mem. op., not designated for publication).

Here, Appellant does not dispute the ages or availability of the children to testify. Instead, Appellant claims only that A.D.1.'s statement, "my dad touched my penis," and I.D.'s statement that Appellant "would touch her down there" failed to specifically describe acts of sexual abuse.

Rodarte testified that while she and McElvaney were discussing appropriate and inappropriate touching with the children, A.D.1. unambiguously stated that Appellant touched his penis. A.D.1. was "upset," and later expressed that Appellant "should be in jail for what he did." He described sitting on the couch while it occurred, and said "he didn't understand what was happening, and he was just, like, there." When Appellant's trial counsel asked Rodarte whether there was "any indication that this could have been something like he was having his diaper changed or kind of a routine parental activity," Rodarte responded that, according to A.D.1., Appellant "wouldn't change [A.D.1's] diaper."

Around the same time period, Rodarte and McElvaney saw I.D. masturbating in the living room. I.D. told them that Appellant "would touch her down there." As Rodarte and McElvaney explained "the appropriateness of masturbating and

touching yourself," I.D. became upset, ashamed, embarrassed, and "confused about why it was inappropriate for her father to touch her." I.D. did not say anything about a diaper change when she said that "[her] dad touched her privates." Instead, she told them that Appellant touched her private parts with his hand in her bedroom at night.

Given the "time, content, and circumstances" of the children's statements, we conclude that the trial court did not abuse its discretion in admitting them. *See* FAM. § 104.006. It is undisputed that Appellant had the opportunity to sexually abuse his children, and there was likewise nothing indicating that the children had a motive to fabricate the statements. Appellant testified only that they were manipulated by his mother and the foster parents, without further explanation. But Rodarte, McElvaney, and the children's therapists determined that the children were truthfully describing acts of sexual abuse based on their demeanor, and the context in which the statements were made. Along those lines, their behaviors changed when discussing the abuse. *See Buentello*, 512 S.W.3d at 518 n.4. Finally, the children made their outcries of sexual abuse spontaneously, without evidence to support Appellant's unsubstantiated claims that they were manipulated. This was sufficient for the trial court as the factfinder to determine that the incidents rose to the level of abuse. *See id.*; *In re E.M.*, 494 S.W.3d 209, 218 (Tex. App.—Waco 2015, pet. denied).

With respect to the specificity of A.D.1.'s and I.D.'s outcries, "we cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults." *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). "To expect such testimonial capabilities of children would be to condone, if not encourage, the searching out of children to be the victims of crimes such as the instant offense in order to evade successful prosecution." *Id.* We further note that statements similar to A.D.1.'s and I.D.'s have constituted legally

sufficient evidence to support convictions for acts of sexual abuse against children. *See, e.g., Guevara v. State*, 667 S.W.3d 422, 428–38 (Tex. App.—Beaumont 2023, pet. ref'd) (child victim's testimony that the defendant "put his private part inside [hers]" and "made [her] touch his private" was legally sufficient evidence of aggravated sexual assault of a child and indecency with a child); *In re C.E.S.*, 400 S.W.3d 187, 194–95 (Tex. App.—El Paso 2013, no pet.); *Jones v. State*, 184 S.W.3d 915, 917–20 (Tex. App.—Austin 2006, no pet.) (conviction upheld based on child's testimony that defendant touched her "in her private area"); *see also Tulio v. State*, No. 04-17-00778-CR, 2018 WL 6331034, at *3–4 (Tex. App.—San Antonio Dec. 5, 2018, no pet.) (mem. op., not designated for publication) (aggravated sexual assault of a child conviction supported by child's testimony that the defendant's "middle part" touched her "butt"); *Martinez v. State*, No. 11-13-00091-CR, 2015 WL 1778989, at *4–5 (Tex. App.—Eastland Apr. 16, 2015, no pet.) (mem. op., not designated for publication) (conviction upheld based on the child victim's testimony that the defendant showed her his "middle"); *Snodgrass v. State*, No. 11-02-00104-CR, 2003 WL 21363028, at *3–5 (Tex. App.—Eastland June 12, 2003, no pet.) (not designated for publication) (evidence legally sufficient where child testified that the defendant touched her "private spots").

The trial court thus acted within its discretion in admitting the children's outcry statements and could have reasonably found under the circumstances that there was no other nonsexual explanation for the touching. Because it is undisputed that evidence of sexual abuse and a propensity toward violent behavior support a finding of endangerment, the evidence was legally and factually sufficient to support the trial court's endangerment finding under subsections (D) and (E). *See In re L.W.*, No. 01-18-01025-CV, 2019 WL 1523124, at *11 (Tex. App.—Houston [1st Dist.] Apr. 9, 2019, pet. denied) (mem. op.) ("Without question, direct physical abuse of

the children clearly endangers them."); *I.R.H.*, 2017 WL 3994682, at *2; *see also In re W.B.W.*, No. 11-11-00269-CV, 2012 WL 2856067, at *10 (Tex. App.—Eastland July 12, 2012, pet. denied) (mem. op.) (It is "beyond question" that sexual abuse constitutes conduct that endangers a child's physical or emotional well-being.) (citing *R.W.*, 129 S.W.3d at 742). Having found sufficient evidence of endangerment under subsections (D) and (E), we need not address Appellant's argument as to subsection (F). *N.G.*, 577 S.W.3d at 234–35; *see also* TEX. R. APP. P. 47.1. Accordingly, we overrule Appellant first and second issues.

### Best Interest of the Children

In Appellant's third issue, he challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights would be in the best interest of the children. The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *J.P.B.*, 180 S.W.3d at 573. Giving due deference to the trial court, we hold that, based on the evidence and the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

As evidence supporting termination under the grounds listed in Section 161.001(b)(1) can be considered in the best-interest analysis, the trial court could properly consider Appellant's sexual abuse of A.D.1. and I.D., and physical abuse of A.D.1 in determining whether the termination of Appellant's parental rights was in the best interest of the children. *See C.H.*, 89 S.W.3d at 28. And we reiterate that, although Appellant denied that he did anything wrong or inappropriate, the trial court was the "sole arbiter when assessing the credibility and demeanor of

14

witnesses," and was free to disregard evidence that it reasonably found to be incredible. *J.W.*, 645 S.W.3d at 741; *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

In addition to the evidence that Appellant physically and sexually abused his children, the trial was presented with ample other evidence that Appellant lacked the parental abilities to meet his children's physical and emotional needs now and in the future. As set forth above, the Department's involvement in the underlying case began in 2019 with the three young children playing in the middle of the street, unsupervised, unclothed, and dirty. Police returned the children to their unsanitary home where Appellant and the mother were asleep.

Appellant had been warned in the past about the unhygienic and unsanitary living conditions for his children and had yet to demonstrate the ability to provide his children with a clean and safe home. In 2016, the Department validated neglectful supervision allegations against Appellant and the mother that A.D.1. and I.D.[5] "constantly [went] without proper food," were not bathed, and "[drank] out of bottles and sippy cups that [had] mold and clotted milk." The case was closed in 2017 after Appellant and the mother completed family-based services, but the trial court could consider Appellant's pattern of keeping the children in an unsanitary environment when determining their best interest. *See C.H.*, 89 S.W.3d at 28 (prior history of child neglect has a bearing on a parent's fitness to provide for his children).

Appellant refused to let Patricia Dotson, the most recent permanency case manager, inside his home, but she testified that she could smell a "musty" odor even while standing on the porch. Additionally, Appellant had not paid his court-ordered child support since removal, nor had he offered any diapers or other contributions to the caseworkers or foster parents in an effort to provide for his children. He said

---

[5]A.D.2. was born on February 11, 2018, after the Department's first intervention.

himself that "[i]t's gotten to the point where [he] just [does]n't even care no [sic] more."

Rodarte and McElvaney, by contrast, have given the children a clean, safe, and stable home environment and have met all the children's physical and emotional needs. Dotson testified that: "[t]he children have stated time and time again . . . to caseworkers, to anybody that they possibly can, that they desire to stay in the home that they are in. They're comfortable. They'[r]e loved. They're very well taken care of."

Most importantly, given the child-centered focus of the best-interest inquiry, we may not discount or minimize the children's improvement since removal. *See J.W.*, 645 S.W.3d at 746–47. A.D.2. graduated from therapy and is nearly potty-trained. A.D.1. and I.D. are still attending occupational therapy at least once a week, and all three children receive speech therapy twice a week. A.D.1. receives services for his dyslexia and emotional disturbance through his school, and I.D.'s medical needs, including her heart defect, are being monitored and met in her foster parents' care. Additionally, the children's reading levels have improved, A.D.1. and I.D. have learned coping skills, and, as Rodarte testified, the children are emotionally resilient.

In addition to their physical and emotional improvement, the older children have expressed the desire to be adopted. *See Holley*, 544 S.W.2d at 372–73. I.D. told Rodarte, her therapist, and the case manager that she feels safe in her foster home and has no interest in returning to Appellant's home because she "did not feel safe" there. A.D.1. told his foster parents and therapist that Appellant belongs in jail, is "evil," and that he was worried Appellant will abuse his newest child, J.D.[6]

---

[6]J.D. was not a subject-child of the underlying suit and is not part of this appeal.

A.D.2. was nonverbal when the older children made their outcries and was too young to remember the abuse prior to removal.

Upon considering the record as it relates to Appellant's actions and inactions, the desires of the children, the emotional and physical danger to the children now and in the future, the emotional and physical needs of the children now and in the future, Appellant's parental abilities, Appellant's history of sexual and physical abuse, and the plans for the children by the Department, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72; *J.W.*, 645 S.W.3d at 741. Therefore, we overrule Appellant's third issue.

*This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

January 11, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

17